THE PEOPLE, APPELLANT, *v.* RUIZ, *alias* MORA, RESPONDENT.

APPEAL from the District Court of Ponce.

No. 461.—Decided February 10, 1913.

CRIMINAL LAW—JURISDICTION—UNCONSTITUTIONAL LAW.—The unconstitutionality
of a statute does not deprive a court of jurisdiction but shows that the offense
charged is not punishable by law.

ID.—ESCAPE OF PRISONER—JURISDICTION.—The district court of the district in
which a prisoner escapes has jurisdiction of the crime of escape defined in
section 152 of the Penal Code and not the court which sentenced the deserter.

The facts are stated in the opinion.

*Mr. Charles E. Foote, fiscal,* for The People.

The respondent did not appear.

MR. JUSTICE ALDREY delivered the opinion of the court.

The *fiscal* of the District Court of Ponce filed an informa-
tion in said district court against Angel Ruiz, *alias* Mora,
charging that while said Mora was doing convict labor on
the road works of the Barceloneta highway in the judicial
district of Arecibo on March 18, 1912, he wilfully and un-
lawfully deserted from said works, the information alleg-
ing further that when he made his escape he was lawfully
confined in the penitentiary of San Juan, P. R., by virtue of
a sentence pronounced October 31, 1891, by the District Court
of the judicial district of Ponce after a trial on the charge of
larceny, said sentence being confinement for four years, six
months and one day in the penitentiary, and that he was tem-
porarily present on the Barceloneta highway.

In his information the *fiscal* asked the court to cause a
warrant to be issued by the secretary for the arrest of the
accused to answer to said charge made against him, and on
July 2, 1912, the court entered an order refusing the warrant
of arrest and dismissing the case on the ground that it had no
jurisdiction to take cognizance of the offense with which the
accused was charged, for the following reasons: (*a*) Be-
cause according to the information the offense was not com-

mitted within the jurisdiction of the court, and (b) because there is no valid or enforceable statute punishing such an offense. In support of his decision the judge wrote an extensive opinion.

That decision was appealed from to this court by the *fiscal* of the court below and the appeal was prosecuted here by the *fiscal* of this court, who both in his statement of the main facts of the case and in his oral argument dealt at length with the constitutionality of the law, and after alleging that the District Court of Ponce had jurisdiction to take cognizance of the case because it was that court which rendered the original judgment against Angel Ruiz, *alias* Mora, he closed by praying the court to reverse the decision appealed from.

Although the court below maintains that it had no jurisdiction in this case owing to the unconstitutionality of the statute, as stated in the second reason for dismissing it, this ground, as a matter of fact, does not deprive it of jurisdiction, but simply shows that the offense charged is not punishable by law. Therefore, the two reasons or grounds upon which the judge based his opinion, that the court had no jurisdiction in this case, involve two distinct and separate questions: One that the offense was not committed within his district and the other that if it had been, the offense charged is not punishable by law.

Having made this plain, the first question that comes up and that must be decided is whether or not, as a matter of fact, the District Court of Ponce had jurisdiction to take cognizance of the offense charged against the accused, the escape sought to be punished having taken place in Barceloneta which is within the judicial district of Arecibo.

Section 152 of the Penal Code, which anticipates and punishes the escape of a person from the prison where he may be serving a sentence, provides that he shall be punished by a summary order of the competent court; and in view of the terms of the law the appellant maintains that the court which

passed the sentence violated is the court of competent jurisdiction.

We have found nothing in the law or in the brief of appellant which supports that theory; on the contrary, section 8 of the Code of Criminal Procedure provides that the jurisdiction of an offense shall be in the district court of the district where the offense was committed. Section 82 of the same code, paragraphs 1 and 4, provides that the information is sufficient if it can be understood therefrom that it has been entitled in a court having authority to receive it, and that the offense was committed at some place within the jurisdiction of the court, except where the act, though done without the local jurisdiction of the court, is triable therein. Therefore the general rule is that all offenses shall be tried in the district within which they were committed, except where the law expressly confers jurisdiction upon a court to try offenses committed outside its territory. And since the case at bar does not come within any of the exceptions expressly mentioned in the statutes it is covered by the general rule given in said section 8; consequently the act alleged to constitute an offense having been committed on the Barceloneta highway, which is not within the jurisdiction of the District Court of Ponce, this latter court lacks jurisdiction to take cognizance of the offense with which Angel Ruiz, *alias* Mora, was charged.

The court in which the information was filed being, therefore, without jurisdiction it would be idle for us to consider the second ground upon which the judge of the court below based the decision appealed from, the discussion of which ground would have been pertinent had the case been the reverse; but let it be understood that our refraining from considering this point in this instance does not imply either our assent or dissent from the opinion of the court below thereon.

For the reasons stated in this opinion the decision appealed from should be affirmed.

*Affirmed.*

Chief Justice Hernández. and Justices Wolf and del Toro concurred.

Mr. Justice MacLeary signed stating that. he concurred in the judgment only.

CONCURRENT OPINION OF MR. JUSTICE MACLEARY.

Agreeing as I do, that the resolution entered by the trial court in this case should be affirmed, though not being satisfied with the manner in which the issues involved are treated in the opinion of the court, the duty devolves on me to file a concurrent opinion, setting forth my own views.

On the 21st of July last the District Judge of the District Court at Ponce made the following order in this case:

"For the reasons expressed in the opinion delivered separately in this case, which is made a part of this order, the court denies the issuance of a warrant of arrest, which is prayed for, and decrees the dismissal of this case, with the costs de oficio."

An appeal was taken from this order by the *fiscal* of the district and it is before us for consideration and decision.

The accusation in which the arrest of the defendant was sought, substantially charged that Angel Ruiz, *alias* Mora, had committed a felony in that on the 18th of March of the current year the accused, while employed in convict labor on the highway of Barceloneta, in the judicial district of Arecibo, maliciously and illegally deserted; that the said accused, at the time he made his escape, was undergoing a lawful term of imprisonment in the penitentiary at San Juan, Porto Rico, and was incidentally on the highway at Barceloneta, at work on the public roads.

No appearance was made for the respondent in this Supreme Court and no brief filed in his behalf. He probably relies for an affirmance on the opinion expressed by the district judge and on which the order in his favor was. based. The *fiscal* of this court made an elaborate report, or brief,

and argued the case orally at the hearing which took place on the 30th of October last. The decision of the district judge, as shown in his opinion, was based on two points: *First*. That the offense, according to the accusation, was not committed within the territorial jurisdiction of the trial court, and, *Second*, that there is no legal precept or principle, which is valid or in force at the present time, providing any punishment for the commission of the offense charged in the accusation. The trial judge elaborated extensively both of these points, in a very voluminous opinion set forth in the record, and held both of them in favor of the defendant. In this court the *fiscal* thereof, though alluding to the first in passing, virtually argues only the second point, which involves the constitutionality of section 152 of the Penal Code, which it is said may be in conflict with the Fourteenth Amendment of the Constitution of the United States, in denying to the defendant the equal protection of the laws. The *fiscal* does not notice, at any length in his brief, the question of territorial jurisdiction, which was the first one presented in the opinion of the trial judge.

It has been said that it is idle in this case to consider the constitutional question to which so much attention has been given by the trial court and that under other circumstances, not clearly indicated, such a discussion would have been pertinent. It is certainly not my desire to perform an idle task or to indulge in an impertinent discussion. But I do not take such views of the duties of appellate courts. They sit for the correction of the errors into which inferior courts may fall either in the hurry of the trial or from other circumstances. In my humble opinion it is unworthy of a court of last resort to evade the consideration and decision of any important question fairly presented in the record and properly arising on the law and the facts of the case as it was tried in the court below. The record, as made up in the court below, is presented for the calm consideration of the appellate court; and counsel learned in the law, after careful study,

discuss the issues involved and cite authorities to sustain their arguments, asking a decision of each question, not only for the purpose of guiding the court below in the further progress of the case submitted but in order that the opinion of the superior court may be followed in the determination of other similar cases which may afterwards arise. It is due not only to the trial court but to the bar to give their opinions and discussions respectful consideration and they should not be idly brushed aside as impertinent. Courts of last resort are something more than automatic machines designed to grind out decisions on cases thrown helter-skelter into the hoppers of their dockets.

I have thought it proper to discuss the questions raised in the record brought here in this case, in the order of their importance; notwithstanding the last question taken up is the one on which the decision is found to rest. In a somewhat similar case Mr. Chief Justice Marshall pursued a like plan. In the famous controversy of *Marbury* v. *Madison,* 5 U. S., (1 Cranch.) 154, he introduces the discussion thus: ·

"In the order in which the court has viewed this subject, the following questions have been considered and decided: (1) Has the applicant a right to the commission he demands? (2) If he has a right, and that right has been violated, do the laws of his country afford him a remedy? (3) If they do afford him a remedy, is it a *mandamus* issuing from this court?"

It is seen that the case involved the issue of a *mandamus* by the Supreme Court of the United States. The court held that Marbury, having been appointed a justice of the peace in the District of Columbia, had a right to his commission as such and that having such a right the laws of the country afforded him a remedy; and that a writ of *mandamus* could properly issue against the Secretary of State compelling him to deliver the commission; but that the Act of Congress attempting to confer original jurisdiction on the Supreme Court in such cases was unconstitutional; and finally that the Su-

preme Court had no jurisdiction of the case. The very able discussion set out by the most distinguished lawyer that ever graced the most exalted tribunal might be deemed by some to be "idle and impertinent" but such is not the view taken by the great mass of American lawyers and the hundreds of courts on the continent which have, for the last hundred and ten years, quoted with approval that luminous opinion and followed it in hundreds and perhaps thousands of other cases. It may possibly be that my method is wrong but I am content to err with Marshall rather than agree with those who regard his manner of treating legal questions as antiquated and not worthy of consideration.

These points will then be taken up in the order of their importance: *First.* The one treating of the constitutionality of the statute, and, *Second,* the question involving the territorial jurisdiction.

The district judge holds that section 152 of our Penal Code is in contravention of the Constitution of the United States in denying to the defendant the equal protection of the laws. It is well to observe that courts generally, even the Supreme Court of the United States, are very reluctant to hold a legislative enactment to be unconstitutional and consequently null and void; but, of course, when the matter is fairly presented and the question arises as to what the law is, governing the pending case, any contradiction or irreconcilable conflict between the Constitution of the United States or a State Constitution or a Territorial Organic Act, and a statute enacted by the legislature, must be decided, giving effect to the principles that a state constitution is superior to a corresponding statute and that the Constitution of the United Sates and the laws of Congress passed in pursuance thereof are the supreme law of the land and all judges are bound thereby, any provision of the State constitution or any legislative enactment by a state to the contrary notwithstanding. (Cons. U. S., Art. VI, Sec. 2.) Surely it is unnecessary to say that any statute of Porto Rico in contravention of the

American Constitution or of the Organic Act cannot be held as valid.

Many people have an idea that courts undertake of their own motion to nullify acts of the legislature, merely assigning arbitrarily as a reason therefor that they are unconstitutional. In point of fact, courts do no such thing; but all courts must, in deciding any pending case, first arrive at a conclusion as to what is the law governing the same, and all courts and judges are sworn to obey the Constitution of the United States and the constitutions of the several states and must give effect to the laws as they are written, whether passed by the People in their sovereign capacity or by the legislature by them duly elected. When two statutes or two written laws, whether included in the constitution or the statute book, are found to be in conflict, they cannot both be the law, and of course the superior must prevail over the inferior. Then, where the Constitution of the United States is clearly disregarded by an act of the legislature of a state or territory, the latter is null and void *ipso facto*. It is not made so by the court but it is merely found to be so because of the repugnance between it and the law which is superior and to which it is subordinate. This whole question is ably treated and forever set at rest by the great chief justice in *Marbury* v. *Madison*, referred to on a prior page of this discussion.

But generally trial courts should be more reluctant than others to declare a law inconsistent with the constitution; or, as we term it generally, unconstitutional. It is somewhat strange that any court, in the trial of a case which is found to be beyond its territorial jurisdiction, should go out of its way to nullify a statute, defining the offense charged against the defendant on trial and to hold it to be repugnant to the constitution. Some excuse could be presented for thus holding valid a law which had been attacked as contrary to the organic law of the nation or the territory. The legislature has the same obligation as courts to obey the constitution in the enactment of laws and it is presumed that such a respect-

able body would not on any account knowingly pass any act
which was in conflict with the constitution; and the legisla-
tive opinion on the subject is entitled to great weight and
consideration, especially by trial courts which are charged
with the duty of interpreting and executing legislative enact-
ments.

Appellate courts, while reluctant to declare an act of the
legislature to be unconstitutional or in contravention to the
supreme law of the land, must necessarily do so when the
defective law is fairly and squarely presented in a pending
case for their consideration. As there is always an appeal,
or nearly always, from the decisions of the trial courts to the
higher courts, they can be less attentive than appellate courts
to questions of this nature and generally they should interpret
and execute the statutes as they are found written in the ses-
sion acts and leave constitutional questions to be determined
by the higher courts on appeal.

The trial judge in this case compares our statute with
those of California and Idaho and while he cites no decisions
of California bearing directly on the case, he finds one of
Idaho which is, in his opinion, entirely satisfactory and which
demands that our statute under consideration should be con-
sidered to be unconstitutional. The case on which he relies is
that of Mallon *ex parte,* 16 Idaho, 737; 22 L. R. A. N. S.,1123;
102 Pac., 374. This opinion is quoted by the trial court at
great length and refers to a Kansas case styled *State* v.
*Lewin,* 53 Kansas, 679, 37 Pac. Rep., 168, which sustains the
conclusion arrived at by the Supreme Court of Idaho. The
said distinguished judicial tribunal quoted in its decision,
among other arguments and observations, uses the following
language:

"The second and third objections made to the statute will be con-
sidered together, and in our judgment present the real and important
question involved in this case—that is, does this statute deny equal
protection to all persons charged with a violation thereof, and is it
unreasonable or class legislation?

"It will be observed that the punishment to be inflicted under this statute depends entirely upon the sentence the convict is serving at the time of the escape. If a convict is serving a one year sentence and escapes, upon conviction of such escape he must be sentenced to serve an additional year from the expiration of the first sentence.

"If a convict is serving a twenty-year sentence and escapes, upon conviction of such escape he must be sentenced to serve an additional twenty years from the expiration of the first sentence. A maximum and minimum penalty, within which the court is given the discretion to fix the punishment according to the gravity of the offense, is not permitted. The offense is not divided into grades, unless it can be said that the grade of the crime is fixed by the sentence from which the convict is escaping; and the attorney general adopts this contention and argues that the statute does graduate the punishment according to the offense for which the convict was serving at the time of the escape, and that this is a proper and reasonable classification.

"We think it may be stated as a general proposition of law that every person is entitled to the equal protection of the law, and that equal protection of the law means that equal protection and security should be given to all under like circumstances in his life, his liberty and his property and in the pursuit of happiness, and in the exemption from any greater burden and charge than are equally imposed upon all others under like circumstances. (8 Cyc., 1058, 1059; *Barbier* v. *Connolly,* 113 U. S., 27; 5 Sup. Ct., 357; 27 L. ed., 924.)

"* * * Two convicts effecting an escape from the state prison on the same day in concert under precisely the same circumstances and exactly equal grade would receive wholly different punishment. If one had been confined for six months, his punishment would be increased but six months, while the other, who might have been confined for twenty years, would be sentenced for a further confinement for that number of years; and so if different sentences had been imposed of different terms. The vice of this statute is that the character or nature of the offense committed is not the basis upon which the extent of the punishment is fixed.

*       *       *       *       *       *       *

"The assertion that society will be in greater danger from the person who has served a long term of years than from the person who has served a short term—in case of escape from the penitentiary— is not, in our judgment, based upon reason or natural laws or conditions, and not a natural reason why a greater punishment should be imposed upon the person who escapes from the penitentiary while

undergoing a long-term sentence than is imposed upon a person undergoing a short term. But the punishment thus fixed for escape is arbitrary, unreasonable, unnatural and in no way based upon the nature, character, or gravity of the offense. That no one shall be subject to any greater burdens or charges than such as are imposed upon all others under like circumstances means that such protection shall be extended to every person and everywhere without reference to his position in society or station in life; whether he lives in town or country, or whatever color may be the house in which he lives, or whether humble or imposing in structure. To say that 'under like circumstances' may be extended to mean (as applied to the facts of this case) all persons serving like sentences, would make the crime of escape have reference to matters not involved in the nature or character of the escape. 'Under like circumstances,' as applied to an escape, would seem to suggest a classification with reference to whether the escape was peaceable and without resistance, or by force or violence, or by false representation, threats, bribery, or promises of gain or some natural classification with reference to the crime; but a classification based upon the character of sentence being served is, in our judgment, arbitrary and unreasonable, and a clear violation of the provisions of the constitution of this State and the fourteenth amendment to the Constitution of the United States, which guarantees to every person equal protection before the law.

"* * * We, however, must take this statute as it reads, and when so taken the punishment is fixed arbitrarily and is not in any sense left to the discretion of the trial court. If the legislature in its wisdom—and it no doubt would be wise—desires to provide a penalty for escapes or attempts to escape from the state prison, such legislation would be simple, and need not in any sense be complicated in order to accomplish the results desired. It could be made to apply to all persons who escape or attempt to escape from the state prison, and the punishment could be fixed with reference to the nature or character of the offense—that is, if the effort was peaceable the gravity of the offense would be less than if forceable and by threats; and the extent of punishment might be committed to the trial court with a minimum and maximum fixed between which the court could exercise its discretion as is generally provided for public offenses, and the constitutional objections to such statute could not then be urged."
(Mallon *ex parte,* 16 Idaho, 737; 102 Pacific, 374; 22 L. R. A. N. S., 1123.)

It is true that other considerations and illustrations are mentioned in the elaborate discussion given by the Supreme Court of the State in regard to the validity of the Idaho Statute; but the foregoing paragraphs seem to contain the gist of the argument. I have quoted so extensively from this opinion, not only on account of the high esteem in which the Supreme Court of Idaho is held, but because one of my colleagues seems to think that this decision might possibly apply to such a case as the one under consideration.

On comparing the statute of Idaho, section 6452 of the Revised Statutes of that State, with section 152 of our Penal Code, we find that there is a radical difference between the two. The Idaho statute reads as follows:

"Every State prisoner confined in the State prison for a term less than for life, who escapes therefrom, is punishable by imprisonment in the state prison for a term equal in length to the term. he was serving at the time of such escape; said second term of imprisonment to commence from the time he would otherwise have been discharged from said prison."

The Porto Rican statute reads as follows:

"Penal Code.—Section 152.—Every person who shall escape from prison while serving his sentence shall be punishable by summary order of the competent court, by imprisonment for an additional term of not less than one-twentieth or more than one-fifth of the term of the original sentence."

It will be seen that the Idaho statute is considered arbitrary and is denounced by Mr. Justice Stewart in his opinion as "unreasonable, unnatural and not based on the nature, character or gravity of the offense," because it gives the trial court no discretion whatever as to the amount and duration of the punishment to be inflicted for the escape, but makes it the same as that imposed for the offense on which the convict was already confined. Our statute on the contrary gives to the trial judge the discretion of imposing, for the escape, an im-

prisonment not less than one-twentieth of that to which he had been formerly condemned, nor more than one-fifth thereof, thus giving a wide latitude to the judicial mind in the imposition of the punishment, and thereby exempting the Porto Rican statute from the opprobium of being arbitrary, unreasonable, unnatural, and not based on the nature, character or gravity of the offense. Nor does the Idaho court take into consideration that the escaped convict owes to the State, whose laws he has violated, the service to which he has been condemned, and that by his desertion he is defrauding the People, in like manner as if he had embezzled the public funds, in which case his punishment would be graduated to some extent according to the amount of his embezzlement. Larceny is generally classified into grand and petty grades according to the value of the property stolen. So it seems to me that the opinion of the Supreme Court of Idaho, however correct it may be, is not applicable to our statute, and we should not follow the same.

It is not necessary to discuss the amendments made to the California Code from time to time and the reasons which are conjectured by the trial court to underlie the same. Confident, as I am, that there is nothing in our Code in contravention of the Fourteenth Amendament of the Constitution of the United States or of any other superior law, I should be constrained to hold section 152 of our Penal Code to be constitutional and in full force and effect.

This brings me to the second question presented for consideration, which involves the territorial jurisdiction of the district court, which is scarcely discussed by the *fiscal* in his argument, but is briefly elaborated in the opinion of the trial court. Let us first look at the Statutes. Article 8 of our Code of Criminal Procedure, reads as follows: "The jurisdiction of an offense shall be in the district court of the district where the offense has been committed," and paragraphs 1 and 2 of section 82 of the same code read as follows: "That it (the information) is entitled in a court having authority

to receive it, though the name of the court be not stated."
"That the information be subscribed and presented to the
court by the prosecuting attorney of the district in which the
court is held."

From these statutes it may be seen that only the district
court of the place wherein the crime charged is found to have
been committed, has jurisdiction to try the same.  This view
is supported by decisions of courts in Pennsylvania and Cali-
fornia.  It is the jurisdiction over the place where the offense
was committed which gives authority to prosecute the of-
fender regardless of the jurisdiction of the court by which the
prisoner was sentenced to his original confinement.  So it is
that a prisoner escaping from a state jail may be indicted
therefor in the state court, although he may be in custody
under a commitment issued by the courts of the United States.
(*Com.* v. *Ramsey,* 1 Brewst. [Pa.] 422. *People* v. *Ah Teung,* 92
Cal., 421; 28 Pac., 577; 15 L. R. A., 190; 16 Cyc., 543.)  I have
carefully considered this matter in a decision lately rendered
in a case of seduction decided by the District Court of Gua-
yama and appealed to this court.  See *People of Porto Rico*
v. *Garcia,* 18 P. R. R., 814.  Based on the reasoning in that
case and the authorities cited therein, it must be held that
it was the District Court of Arecibo, and not that of Ponce,
which had jurisdiction to try the crime charged in the case
presented here.  The escape of the prisoner having been made
from the highway of Barceloneta in the judicial district of
Arecibo, fixes the jurisdiction in said court.  On this ground,
the order made by the District Court of Ponce must be held
to be correct.  Taking into consideration the matters set
forth in this opinion and the law applicable to the facts of
this case, the order of the District Court of Ponce made
herein, on the 2d day of July, 1912, should be affirmed.