[Crim. No. 2742. First Dist., Div. Two. Nov. 15, 1951.]

THE PEOPLE, Respondent, v. NEWT DARNELL,
Appellant.

Henry Teichert for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener,
Deputy Attorney General, for Respondent.

GOODELL, J.—Appellant was charged by the first count of an information with escape (Pen. Code, § 4532) and by the second with injuring a jail structure (Pen. Code, § 4600). Four prior felony convictions were alleged. He pleaded not guilty to both counts but admitted the prior convictions. A jury found him guilty of both offenses and he was sentenced to the penitentiary, the sentences to run concurrently. This appeal followed.

The escape was made after appellant had been arrested by a deputy sheriff and lodged in a branch county jail at Crockett for disturbing the peace. The jail was damaged in making the escape.

Appellant was paroled from Folsom penitentiary in June, 1950 because of illness, and was living in Richmond. On the afternoon of September 12, 1950, he went with his brother to Crockett to look for work. He was seen lying in the street, apparently intoxicated, and the authorities were notified. Deputy Sheriff Joseph drove to the scene, found him lying under a tree to which he had been helped, attempted to arouse him and finally did so by a blow on the sole of his shoe. The deputy testified that appellant appeared to be intoxicated and that he detected a strong odor of wine on him. Appellant denied that he had been drinking and asserted that he had "blacked out" in a fainting spell, was in pain, and had difficulty in breathing. The deputy testified that he showed signs and symptoms of asthma.

The deputy helped him to his feet and into the deputy's car. He testified that appellant weaved and staggered. Appellant said his name was Woods and that he worked for the Southern Pacific Company. The deputy drove toward the railroad depot where he was met by another officer, Sergeant Briggs. Appellant offered no physical resistance but at that point became very profane and abusive toward Joseph in a loud voice, whereupon the latter said "If you're going to act like that, I'll lock you up." Sergeant Briggs was dressed in a khaki uniform and wore a cap and badge and appellant testified that he saw that it was a uniform, also, that when Joseph returned after meeting Briggs he had keys in his hand. Deputy Sheriff Joseph was dressed in a business suit and kept his badge in his pocket. Sergeant Briggs had brought with him the key to the jail. The two officers lodged appellant in the jail and Joseph searched him. There was a tank or cage in the jail but it was not used in this instance and appellant was left there on a bunk outside the tank. The officers

left the jail with appellant locked therein. Later in the afternoon Joseph returned with a constable to see if he could identify appellant but nothing further happened on that visit.

When the jail was visited after dinnertime the appellant had departed. A medicine bottle which he had left in his coat pocket showed his name and address, and he was re-arrested the same evening in Richmond.

The following morning he appeared in the justice's court and pleaded guilty to the charge of disturbing the peace. At the same time, after being sentenced in the misdemeanor case, he was arraigned on the two felony charges.

On the trial of the felony case appellant's counsel sought to prove that appellant's conduct had not constituted a disturbance of the peace, and contended that both the arrest and confinement were unlawful. The court ruled that that issue could not be relitigated as the appellant had pleaded guilty to the misdemeanor charge.

Appellant frankly admits that the only defense there is to a charge of escape is that the confinement was illegal, but complains that by the court's ruling he was deprived of that defense. Appellant also concedes that "if in fact the defendant had been guilty of a misdemeanor at the time of his arrest a failure on the part of the arresting officer to disclose his authority, intention and cause of arrest would have been cured and the confinement of the defendant could have been said to be lawful (Pen. Code, sec. 841)."

Appellant's counsel (appointed by the court) stressed at the trial, as he does on appeal, the serious difficulties with which the defense was confronted. Appellant testified that when, on the day after the arrest, he was arraigned on the charge of disturbing the peace and pleaded guilty, "I thought I was pleading guilty to the whole thing, escape and—all." In the misdemeanor case appellant had no counsel. On the felony trial appellant's counsel strenuously argued that if not permitted to show the insufficiency of the evidence to sustain the charge of disturbing the peace appellant's plea of guilty to that misdemeanor amounted, in its effect and legal consequences, to a plea of guilty to both felony charges, entered without benefit of counsel.

Section 4532, Penal Code, reads: "Every prisoner charged with or convicted of a felony or misdemeanor who is confined in any county or city jail or prison . . . or who is in the lawful custody of any officer or person, who escapes or at-

tempts to escape from such county or city jail, . . . or from the custody of any officer or person in whose lawful custody he is, is guilty of a felony and is punishable by imprisonment in the state prison not exceeding ten years, or in the county jail not exceeding one year; . . .''

The record is not too clear with respect to the time when the complaint for disturbing the peace was filed. Deputy Sheriff Joseph, under cross-examination by appellant's counsel, testified: "Q. When did you file a complaint against him? A. That same day. Q. What time? A. . . . Sometime between 4:00 and 5:00 o'clock. Sometime around there." Elsewhere the same witness, under direct examination by the prosecuting attorney, when narrating what happened when appellant arrived back in Crockett in the evening after his second arrest said: "There was a complaint already on file in the Justice Court, charging him with 415 . . . Q. Who filed that? A. I did. When we take a man in custody if he's in a condition we can't take him into court that day we file a complaint and bring him into court in the morning. Q. You filed the complaint? A. I filed the complaint and he was brought into court later and pled guilty to the charge [of disturbing the peace]."

The foregoing testimony is sufficient to sustain the implied finding by the jury that the complaint under section 415 Penal Code was laid before the magistrate before the break was made. That being so, appellant was brought squarely within the terms of the statute; he was a prisoner charged with a misdemeanor and confined in a jail.

The justice of the peace testified that the complaint was not *filed* until the morning after the break. Under cross-examination by appellant's counsel he testified:

"Q. Would it be after 9:00 in the morning? A. It would be after 9:00. . . .

"Q. Did Mr. Fortado or did Mr. Joseph file that? A. Mr. Joseph. . . .

"Q. . . . You're not sure it was the 13th, but you know it was the day after the break. Is that true? A. Yes, it was the day after the man broke out of jail. And I'm . . . almost sure it was the 13th."

However, on redirect examination by the prosecuting attorney the following testimony was given:

"Q. The practice of the peace officers in your court is to present complaints and then you file them in the morning when you come to work; is that right? A. That's right.

"Q. As a matter of fact, the Highway Patrol, they present complaints at your office during the day and the night; is that right? A. Yes.

"Q. You enter them all the first thing the next morning? A. Yes."

The latter testimony seems to explain the situation, and it is consistent with Joseph's testimony that circumstances may be such that defendant cannot be brought before the court when the complaint is drawn up, or until the next morning.

 Appellant contends that the deputy did not make the arrest in accordance with section 841 Penal Code which requires that "The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, *except when the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, . . .*" (Italics added.)

It was not until appellant became profane and abusive in a loud voice that the situation took on the character of an arrest. Up to that time Joseph had been simply helping a stranger who was either sick or under the weather, to straighten himself out. It was then that the deputy said "If you're going to act like that, I'll lock you up." If the arrest was made while appellant was "actually engaged" in a disturbance of the peace (Pen. Code, § 415) then it came within the exception contained in section 841 emphasized above. (See *People v. Craig,* 152 Cal. 42, 45-6 [91 P. 997].) "The reason that notification of official character of the person making an arrest is not required when the party is apprehended in the commission of an offense . . . is because he must know the reason why he is arrested." (3 Cal.Jur. p. 129; see *People v. Young,* 136 Cal.App. 699, 705 [29 P.2d 440], quoting *People v. Pool,* 27 Cal. 572, 576.)

 But conceding for the purpose of the discussion that the arrest was less formal than it might have been, it is difficult to see how that could affect in any way the legality of the confinement. As soon as the appellant was locked up the arrest, as such, was an accomplished fact, and as soon as the complaint was drawn up appellant was a "prisoner charged with . . . a . . . misdemeanor" and confined in a jail. That being so, it was the only question in the case under the first count and any irregularity in the arrest would not be material or have any bearing at all on such issue.

If appellant had offered physical resistance (Pen. Code, § 148) and was being prosecuted therefor, the circumstances of the arrest would certainly have been material (see *People* v. *Perry*, 79 Cal.App.2d Supp. 906 [180 P.2d 465], where the authorities on arrest are collected in an extensive discussion of the subject). Again, had appellant broken away from the arresting officer before reaching the jail (a distinct offense under § 4532) the circumstances of the arrest would undoubtedly have been material. But he neither offered physical resistance, nor broke away from the officer. In an action for false arrest the circumstances would likewise have been material.

In *People* v. *Serrano*, 123 Cal.App. 339 [11 P.2d 81], the defendant was arrested without a warrant late one Saturday afternoon and placed in jail where he was booked on the charge of "suspicion of forgery." He remained there Saturday night and Sunday and was last seen in jail about 5:30 Sunday afternoon. Thereafter he made his escape. No complaint was filed against him for forgery until Monday morning, after he had escaped. When charged with escape he moved to quash the information on the ground that there was no escape because he had not been in lawful custody. The information was quashed, but on appeal by the People that order was reversed. The court said: ". . . we are convinced that the charge 'suspicion of forgery' in the jail record was a sufficient designation of the fact that defendant was being held in the city jail until a formal charge of forgery should be made against him upon the opening of the justice's court on the first judicial day following his arrest and detention in jail. Under the provisions of section 836 of the Penal Code said peace officers had a right to arrest the defendant, without a warrant, for forgery. It was the duty of the arresting officer to take defendant before the nearest or most accessible magistrate in the county in which the arrest was made, without unnecessary delay. (Pen. Code, sec. 849.) The arrest being made on a nonjudicial day, the arresting officer had the right to place defendant in the city jail, and under the circumstances of this case the defendant was lawfully detained by, and was in the custody of, the officer in charge of the jail at the time of the escape."

The leading escape cases are cited by appellant, *People* v. *Ah Teung*, 92 Cal. 421 [28 P. 577, 15 L.R.A. 190], and *People* v. *Clark*, 69 Cal.App. 520 [231 P. 590], but neither is in point. In the Ah Teung case the defendant was prosecuted for

aiding in the escape of one Lee Yick from the county jail of Alameda county. The opinion does not show the physical circumstances of the escape but it would appear that it was made without violence. Lee Yick had entered this country from Mexico and was taken before a United States Commissioner in San Diego who made a finding that he was not entitled to remain. Instead of deporting him to Mexico as the law required, he was for some reason or other transferred to the Alameda county jail wherein he was held without any commitment or adjudication (other than the San Diego Commissioner's finding) that he should be deported. He was in a different district from that wherein the hearing was held, and the court in this (northern) district had no jurisdiction of the case. The opportunity presented itself to absent himself from the jail and he made a getaway. Ah Teung was convicted of aiding his escape but the judgment was reversed because there was no authority or legal justification for holding Lee Yick in the Alameda county jail hence there could be no escape. The court's language, appropriate enough to the decision of that case, has no application to the instant case.

In *People* v. *Clark, supra,* the defendant who was convicted of an escape had been convicted of burglary, the penalty for which was confinement in the state prison. The court suspended the sentence, imposing the condition that he work in the Los Angeles county road camp, the imposition of which was wholly beyond the jurisdiction of the court. While in the road camp the defendant availed himself of the opportunity to walk out and his conviction of an escape was reversed because he had never been legally committed to the camp and was not legally confined therein.

Let it be assumed that appellant, instead of pleading guilty after having been rearrested, had stood trial for disturbing the peace, and had won a clear-cut acquittal on that charge. It is difficult to see how such acquittal would have made him any less guilty of escape. *He had still escaped from a jail while charged with a misdemeanor.* (See discussion in *People* v. *Ah Teung, supra,* pp. 425-6 and cases cited.)

For these several reasons we find no error in the ruling rejecting appellant's application to submit to the jury in the felony case, *as an issue therein,* the disturbance of the peace episode. Appellant was on trial for a distinct and later offense. No authority has been cited holding that an informal arrest, even if proved, can vitiate or at all affect proceedings

arising out of an independent, subsequent offense, and we are satisfied that no such authority can be found.

■■ Appellant's contention with respect to the second count is that he was entitled to instructions stressing his right to free himself. from an unlawful confinement even though he incidentally injured jail property.

Section 4600 Penal Code reads: "Every person who wilfully and intentionally breaks down, pulls down, or otherwise destroys or injures any jail or prison,. is punishable by fine not exceeding ten thousand dollars ($10,000), and by imprisonment in the State prison not exceeding five years."

The admitted facts are that in the late afternoon or early evening of September 12, 1950, appellant broke out of the branch jail. It is a small wooden structure with a stucco exterior, about 20 feet long and 10 feet wide, with barred windows and a heavy plank door. In the part where appellant was confined there was a washbasin standing on legs about ¾" in diameter. Appellant ripped loose one of these legs, used it to pry the frame and bars from one of the windows, and climbed out the window.

The court instructed the jury that "Every person who willfully and intentionally destroys or injures any jail is guilty of a public offense. For this purpose, it does not matter whether or not he is lawfully arrested or even whether or not he is a prisoner." While conceding that this is correct as an abstract statement of the law, appellant claims that in this case it was improper because it fails to tell the jury that one unlawfully confined has the right "to avail himself of whatever means are at hand to effect his freedom."

If we are correct in holding that at the time appellant broke out he was lawfully confined, such holding answers this contention, based, as it is, on the untenable premise that the confinement was unlawful.

The defense proposed, but the court rejected, the following instruction: "A person unlawfully deprived of his liberty is not obliged to submit to such violation of his rights merely because the person restraining him is an officer of the law. This is true even though such officer may honestly believe that he is performing his legal duties." That instruction is founded upon the same untenable premise.

The following instructions were tendered by the defense:

"The very foundation of the crime of escape is the lawful confinement of the prisoner; and therefore it is a generally and well-established rule that, when the imprisonment is un-

lawful, the reason which makes flight from prison an offense does not exist. In such a case, the right to liberty is absolute and he who regains it is not guilty of the crime of escape.''

"The right to liberty is absolute. A person illegally arrested may use any reasonable means to effect his escape, even to the extent of using such force as is reasonably necessary. Accordingly, if you find that the defendant was justified in escaping and if you find that he had no other means of escaping than to tear down the window of the jail, you must find that he was not guilty of the second count in this charge, that of intentionally injuring jail property.''

"Where one is unlawfully confined, a jail is merely a private building. Any destruction of it in connection with a lawful departure therefrom is not an offense.''

These proposed instructions, for the most part, were taken from language which the Supreme Court used in *People* v. *Ah Teung, supra,* or from cases cited therein. In the first place, the fact that the language was substantially the same as that employed in a judicial opinion does not mean that it was adaptable to, or appropriate in, an instruction to a jury (24 Cal.Jur. "Trial" § 84, p. 816). Second, they were based on the same premise as the first, quoted above, which is untenable. Third, there is no similarity between this and the Ah Teung case.

There was no error in refusing these instructions.

Appellant concedes that the case of *People* v. *Boren,* 139 Cal. 210 [72 P. 899] "is the principal obstacle to appellant's contention in the present appeal.'' That case was decided when the subject now covered by section 4600 was covered by section 606 Penal Code. The two sections are, as appellant concedes, "extremely similar in wording" and we see no reason why the present section should be given any different effect or meaning than that given to the parent section in the Boren case. See, also, *People* v. *Sheldon,* 68 Cal. 434 [9 P. 457].

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.