THE STATE OF OHIO, APPELLANT, *v.* FERGUSON, APPELLEE.

(No. 557—Decided March 17, 1955.)

*Mr. George R. Smith,* prosecuting attorney, for appellant.
*Messrs. Aultman, Shaw & Cox,* for appellee.

WISEMAN, J. This is a proceeding instituted by the Prosecuting Attorney of Greene County under the provisions of Sections 2945.67 and 2945.68, Revised Code.

The defendant was indicted for escaping from the Greene County Jail, in which he was confined in violation of Section 2901.11, Revised Code. The trial in the Common Pleas Court of Greene County resulted in a directed verdict for the defendant on the ground that the confinement from which the defendant escaped was illegal. Thereupon, the defendant was released from custody.

This proceeding raises a novel and interesting question of law. Is a prisoner who escapes from confinement in a county jail guilty of violating Section 2901.11, Revised Code, when his confinement is illegal? We find no reported case in Ohio. Section 2901.11, Revised Code, was formerly Section 12408, General Code, and, by a recent amendment, effective October 2, 1953, made escape from a county jail a crime. A search of the case law does not disclose a judicial interpretation of this section which provides as follows:

"No person in the legal custody of guards or officers, shall hold a guard or officer as hostage or wound or inflict other bodily injury upon one of such guards or officers. *No person shall escape, attempt to escape or aid, assist or induce others to escape from any confinement or restraint imposed as a result of a criminal,* contempt, or probate *proceeding,* or render less secure any institution or facility wherein he is confined, or make, procure, secrete, or have in his possession an instrument, tool, or thing, with intent to kill, wound or inflict bodily injury, or resist the lawful authority of an officer or guard." (Emphasis ours.)

The first question presented is one of interpretation. Is it a prerequisite that the confinement be a legal confinement before an escaped prisoner can be guilty of violating such section? We think so. The first words of the first sentence in that section are: "No person in the *legal custody,*" etc. Unquestionably, here, by the express words of the statute, "legal custody"

is made a prerequisite to a charge of having held a guard as hostage, or of inflicting bodily injury, etc., upon such guard. The second sentence, which makes it an offense to escape from confinement, states that ''no person shall escape, * * * from any confinement * * * imposed as a result of a criminal * * * proceeding.'' The section does not expressly limit its application to an escape from a *legal confinement*, but we think this is the only sound interpretation. It would be a strange situation if the Legislature intended to limit a prosecution under the first sentence in this section to a person in legal custody, and in the next sentence provide for the prosecution for an escape, whether the confinement was legal or illegal. It would be an anomaly in the law if the Legislature intended to make it an offense to escape from an illegal confinement. We conclude that under the provisions of this section ''any confinement'' must be construed to mean ''any legal confinement.'' In this connection we observe that the indictment in this case alleges that the defendant ''did unlawfully escape from *lawful confinement* in the Greene County Jail.''

The state contends that, even though the confinement from which the defendant escaped was illegal, he is required to use legal process by way of habeas corpus to secure his release. In our opinion, the defendant was not limited to habeas corpus; but if instituted, a writ of habeas corpus could not have been denied. However, the question is: The defendant having secured his liberty by means of escape, can he now be punished and reconfined under another charge for having escaped, when the confinement from which he escaped was illegal? In other words, can a legal charge for escaping be founded on an illegal confinement? We do not think so. In such a case the right to liberty is absolute. In 16 Ohio Jurisprudence, 350, Section 3, it is stated:

''The very foundation of the crime of escape is the lawful confinement of the prisoner, and therefore it is a general and well-established rule that when the imprisonment is unlawful, and is itself a crime against the law, the reason which makes flight from prison an offense does not exist. In such a case the right to liberty is absolute, and he who regains it is not guilty of the technical offense of escape. And where the imprisonment

is without the authority of law there is no offense in assisting the prisoner to escape.''

No Ohio case is cited in the footnote supporting the text. Reference is made to 10 Ruling Case Law, 581, 585. In 10 Ruling Case Law, 579, Section 2, escape is defined as follows:

''The escape may be defined to be the voluntary departure of a person without force from the *lawful custody* of an officer or from any place where he is *lawfully* confined.'' (Emphasis ours.)

On page 581, Section 5, the text is as follows:

''*The very foundation of the crime of escape is the lawful confinement of the prisoner*; and therefore it is a general and well-established rule, that when the imprisonment is unlawful, and is itself a crime against the law, the reason which makes flight from prison an offense does not exist. In such a case the right to liberty is absolute, and he who regains it is not guilty of the technical offense of escape. A person unlawfully deprived of his liberty is not obliged to submit to such violation of his rights merely because the person thus restraining him is an officer of the law, and this is true even though such officer may honestly believe that he is performing his legal duties. It cannot be maintained that the mere confinement within the walls of a prison in violation of the law of the state makes such imprisonment a lawful one, from which it is a crime to escape if opportunity offers.'' (Emphasis ours.)

On page 582, Section 6, it is stated:

''It is difficult to lay down a general rule which will serve in every case to determine whether the detention of the prisoner is lawful, and therefore whether his escape is a crime. *It has been suggested, however, that a fair test is to determine whether or not the prisoner could at the time of his escape have secured his release by habeas corpus.*'' (Emphasis ours.)

The statements made in Ruling Case Law have been carried into 19 American Jurisprudence, 359 *et seq.*, Sections 2 and 10. A part of the text in Ruling Case Law has been taken from the opinion of the court in the case of *People* v. *Ah Teung*, 92 Cal., 421, 28 P., 577, 15 L. R. A., 190, where it was urged, as here, that the prisoner's only remedy was through habeas corpus. The court rejected this view and held that there can be

no escape in a legal sense unless there was a lawful custody.

In *Miers* v. *State,* 34 Tex. Crim. Rep., 161, 29 S. W., 1074, the court held that a person illegally arrested, though he has acquiesced in the arrest, may use such force as is necessary to regain his liberty; and, if it reasonably appears that the officer intends to shoot to prevent his escape, may shoot the officer in self-defense.

The court on page 189 states a factual situation in accord with the charge of the trial court which was rejected as unsound, as follows:

"A is arrested by a private person without authority. A did not resist the arrest. A has no right to escape from such an arrest, and hence the person making the illegal arrest is vested with the authority of a full-fledged officer, armed with all proper authority, and A must go with the trespasser where-soever he desires, and can obtain relief by habeas corpus, we suppose, if his consent has not deprived him of this right. We defy the production of a single authority in support of this proposition. Such a doctrine would be sweet to the highway robber. He would select his time, arrest his man, take him to one side for the purpose of fleecing him, and the prisoner would have no right to regain his liberty, because he had yielded to the arrest without resistance; nor could any other persons in-tervene, for they would have no greater or other rights than the prisoner."

In *State* v. *Beebe,* 13 Kan., 589, 19 Am. Rep., 93, the court held:

"Where a person charged with the commission of a crimi-nal offense is at liberty on bail, and his sureties with his con-sent, but without any copy of the recognizance, deliver him to the sheriff, taking his receipt therefor, *held,* that the sheriff, without having any copy of the recognizance, cannot lawfully hold the accused in custody against his will; and therefore, that the accused in such a case may escape from the custody of the sheriff without committing a felony, and also that any other person may assist him to escape without committing a felony."

In *People* v. *Murphy* (1942), 263 App. Div., 1051, 33 N. Y. Supp. (2d), 963 (affirmed without opinion in 288 N. Y., 613, 42 N. E. [2d], 612), it was held that a defendant who escapes from

the county jail while being confined for a violation of a law prohibiting intoxication in a public place can not be indicted for violation of the penal law prohibiting escapes, since such confinement is not for a crime under the statute.

In *Sugarman* v. *State* (1937), 173 Md., 52, 195 A., 324, the court, on page 57, said:

"The authorities seem in accord that one illegally arrested may use any reasonable means to effect his escape, even to the extent of using such force as is reasonably necessary." (Cases cited.)

In Bouvier's Law Dictionary, Baldwin's Edition (1940), page 362, escape is defined as follows:

"The deliverance of a person who is lawfully imprisoned, out of prison, before such a person is entitled to such deliverance by law.

" * * *

"When a man is imprisoned in a proper place under the process of a court having jurisdiction in the case, he is lawfully imprisoned, notwithstanding the proceedings may be irregular: [cases cited] but if the court has not jurisdiction the imprisonment is unlawful, whether the process be regular or otherwise. [Cases cited.]"

See 163 A. L. R., 1137, for annotation on this subject.

In our opinion Section 2901.11, Revised Code, under which the defendant was charged, is declaratory of the general law which is fairly well established, *i. e.*, an escape, to be indictable, must be from a legal custody or confinement.

Was the confinement from which the defendant escaped a legal confinement? The trial court ruled that it was an illegal confinement and released the defendant. We are now required to consider the factual background. The record shows that the defendant was first confined in the Greene County Jail under the commitment of the mayor of Cedarville, a village in Greene County, on April 15, 1954, on two charges on which the defendant had been tried before the mayor and found guilty. One charge was that of assault in violation of Section 2901.25, Revised Code. The other charge was for trespass in violation of Section 2909.21, Revised Code. To these charges the defendant entered pleas of not guilty. The defendant did not

file a written waiver of a jury. The record shows that he refused to sign a waiver. However, the record does not show that he demanded a jury. It is conceded that the maximum penalties on these two charges are in excess of $50, and imprisonment is also provided as a penalty.

The cases were tried by the mayor without a jury. On the charge of assault, the defendant was fined $200 and costs and sentenced to 6 months in jail; and on the charge of trespass, he was fined $50 and costs and sentenced to 30 days in jail, the sentences to run consecutively. The sentences would not have expired until February 13, 1955. The escape from jail occurred on December 27, 1954. At approximately the same time that those two cases were pending, the defendant was charged before the mayor with carrying concealed weapons. In default of bond, fixed at $1,000, the mayor committed him to the Greene County Jail. The commitment was made on April 14, 1954, one day before the commitments on the other two charges. On the concealed weapons charge, the defendant was not given a preliminary hearing. The record shows that after commitment, upon default of bond, no further action was taken upon this charge. With respect to this charge the defendant was entitled to a preliminary hearing, under Section 2937.02, Revised Code, which provides as follows:

"When an accused is taken before a court or magistrate and a warrant has been returned, such court or magistrate shall inform him of the charge against him and of his right to have counsel, and with the consent of the accused, may proceed forthwith to examine into the merits of the charge. Upon application on behalf of the prosecution or the defense, and for good cause shown, *the court or magistrate shall postpone the examination for a reasonable time, not to exceed ten days except by the consent of both parties.* The absence of counsel or material witnesses is reasonable cause for continuance. *Any postponement of the examination contrary to this section has the legal effect of a dismissal of said proceeding for want of prosecution,* but in event a proceeding is so dismissed it does not have the effect of a bar to any further proceeding upon the same charge." (Emphasis ours.)

The defendant was not accorded a preliminary examina-

tion. Without question, this matter was postponed for a longer period than ten days without the consent of the parties. The postponement was contrary to the provisions of this section and had the legal effect of a dismissal of such proceedings. The mayor lost jurisdiction of the case. The confinement of the defendant under such commitment, eight months after the charge was filed, was illegal and void. *State, ex rel. Micheel,* v. *Vamos,* 144 Ohio St., 628, 60 N. E. (2d), 305.

With respect to the two charges on which the defendant was tried, sentenced and committed by the mayor, it must be observed that the penalties provide for imprisonment, which was a part of the sentence in each case. The defendant had a constitutional right to trial by jury since imprisonment was a part of the penalty. Sections 5 and 10, Article I, Constitution. While the right to trial by jury under the Constitution is declared to be inviolate, which gives recognition to the common-law right to trial by jury, it may be waived. We are required to notice several sections of the Code with respect to trials in criminal cases by mayors. It appears from the record that both counsel and the trial court attached some significance to Section 2945.17, Revised Code, which provides:

"At any trial, in any court, for the violation of any statute, of this state, or of any ordinance of any municipal corporation, except in cases in which the penalty involved does not exceed a fine of fifty dollars, the accused has the right to be tried by a jury."

This section gives the statutory right to trial by jury, if the penalty exceeds a fine of $50. The court was careful to make a finding in the judgment entry that the defendant was sentenced by the mayor for violation of certain statutes which prescribe penalties in excess of a fine of $50. The defendant was entitled to a jury trial under this section; but a jury trial may be waived. Under this and similar sections of the code, it is well established that a jury is waived, unless demanded. *Village of New Miami* v. *White,* 73 Ohio App., 12, 53 N. E. (2d), 664, and *Hayes* v. *Pontius,* 5 Ohio Opinions, 322, 1 Ohio Supp., 294, and cases cited therein; 24 Ohio Jurisprudence, 154, Section 20. The record fails to show that defendant demanded a jury; the defendant waived a jury trial under this section, and the

mayor would have had jurisdiction but for the application of other pertinent sections of the Code and the constitutional guaranty to a trial by jury where imprisonment is part of the penalty.

The controlling sections of the Code, under the facts in this case, are Sections 1905.10 and 1905.11, Revised Code. Section 1905.10, Revised Code, provides:

"The mayor of a village has final jurisdiction to hear and determine any prosecution for a misdemeanor, unless the accused is entitled by the constitution to a trial by jury. The mayor's jurisdiction in such cases is coextensive with the county."

Section 1905.11, Revised Code, provides:

"The mayor of a village has jurisdiction to hear and determine cases as provided in Sections 1905.09 and 1905.10 of the Revised Code, if before the commencement of the trial, a waiver in writing, subscribed by the accused, is filed in the case."

Section 1905.09, Revised Code, has no application.

Sections 1905.10 and 1905.11, Revised Code, recognize the constitutional right to trial by jury where imprisonment is part of the penalty.

In such cases, unlike a statutory right to trial by jury, the accused is entitled to a jury unless it is affirmatively waived. A failure to demand a jury in such cases does not constitute a waiver. The record must affirmatively show that defendant waived a jury. *Hoffman* v. *State,* 98 Ohio St., 137, 139, 120 N. E., 234; *City of Fremont* v. *Keating,* 96 Ohio St., 468, 471, 118 N. E., 114; *In re Quatman,* 96 Ohio App., 422, 122 N. E. (2d), 32. In the case at bar a jury was not waived. The mayor testified that the defendant refused to sign a waiver.

The converse of Section 1905.11, Revised Code, is that if the defendant does not waive trial by jury, the mayor is without jurisdiction to try the case without a jury. The mayor being without jurisdiction, the sentences and commitments were illegal and void. It follows that the confinement of the defendant was illegal and void, and his escape therefrom was not in violation of Section 2901.11, Revised Code.

Under Section 2945.70, Revised Code, the decision of this court does not affect the judgment of the Court of Common

Pleas. The effect of the decision of this court, under the provisions of such section, is to determine "the law to govern in a similar case." In our opinion the trial court properly directed a verdict for the defendant.

*Judgment accordingly.*

MILLER, P. J., and HORNBECK, J., concur.