## STATE, RESPONDENT, *v.* BRADSHAW, APPELLANT.

### (No. 3,848.)

(Submitted September 21, 1916. Decided December 8, 1916.)

[161 Pac. 710.]

*Criminal Law—Resisting Officer—Arrest Without Warrant—Duty and Power of Officer—Burden of Proof—Public Lands—Livestock—Driving from Range—Statutes—Construction.*

Criminal Law—Arrest on Warrant—Peace Officers—Powers.
1. The person named in a warrant of arrest must submit even though not guilty of any offense, and the officer, after making his purpose known and exhibiting the warrant if requested to do so, may use such force as is necessary to effect the arrest, without subjecting himself to a charge of trespass.

Same—Arrest Without Warrant—Power of Officer.
2. A peace officer can make an arrest without a warrant only under the circumstances specified in section 9057, Revised Codes.

Same—Arrest Without Warrant—When Resistance not Crime.
3. Where an officer attempts to make an arrest without a warrant, under circumstances other than those enumerated in section 9057, Revised Codes, the person sought to be arrested may use such force as may be necessary to prevent the arrest, or to effect his escape after arrest.

[As to what constitutes offense of resisting officer, see note in Ann. Cas. 1914B, 813.]

Same—Arrest Without Warrant—Resisting Officer—Burden of Proof.
4. In a prosecution for resisting an officer attempting to make an arrest without a warrant, the existence of anyone of the emergencies pointed out by section 9057, Revised Codes, justifying the arrest, must be clearly established; proof of a mere belief in its existence, though entertained in the utmost good faith, being insufficient.

Same—Arrest Without Warrant—Duty of Officer.
5. An officer about to make an arrest without a warrant must make known his official character if unknown to the offender, else the latter need not submit.

Same—Livestock—Driving from Range—Statutes.
6. *Held,* that section 8858, Revised Codes, and not section 8860—both of which make unlawful the driving of livestock from their accustomed range—declares the law upon the subject.

Public Lands—Use—Policy of Federal Government.
7. It is the policy of the federal government that the open, unoccupied public lands shall be free to all persons who desire to use them for grazing purposes; hence no one can lawfully exercise exclusive control over, and thus monopolize the use of, them.

Same—Acquisition—Use by Others—Livestock—Driving from Range.
8. Until the person who acquires title to public lands chooses to make exclusive use of them, either by erecting lawful fences or by keeping animals running at large driven beyond his boundaries, they may be used for grazing purposes by others; if he chooses to

exercise his right by driving them away, he is not required to drive them to any particular portion of their accustomed range, driving them beyond his boundaries being sufficient.

Criminal Law—Arrest Without Warrant—Resisting Officer—Insufficient Evidence.

9. *Held* that inasmuch as defendant, charged with resisting a deputy sheriff in an attempted arrest, without a warrant, for unlawfully driving cattle from their accustomed range, committed no wrong in driving the cattle from portions of the public domain acquired by him and leaving them on the range in the vicinity of lands belonging to their owner, he was not, under section 9057, *supra*, subject to arrest without a warrant, and therefore not guilty of any offense in resisting arrest.

*Appeal from District Court, Custer County; Daniel L. O'Hern, Judge.*

W. J. BRADSHAW was convicted of the crime of resisting an officer while the latter was in discharge of his duties, and, from the judgment and order denying new trial, he appeals. Reversed and remanded.

Cause submitted on brief of counsel for Appellant.

*Messrs. Sharpless Walker* and *W. C. Packer,* for Appellant.

No appearance on behalf of Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant, having been charged with the crime of resisting a public officer while the latter was in the discharge of his duty in attempting to arrest the defendant, was convicted and sentenced to undergo imprisonment in the county jail and to pay a fine. He has appealed from the judgment and an order denying his motion for a new trial. He assails the validity of the conviction on the grounds that the information does not state a public offense, that the court erred to his prejudice in its rulings upon questions of evidence and in its instructions to the jury, and that the verdict is contrary to the evidence. We shall notice only the contention which questions the sufficiency of the evidence, because in our opinion a conviction could not be

sustained upon the evidence found in the record, nor upon that supplemented by any other which might be introduced on another trial.

The charge in the information is that the defendant did "willfully, unlawfully, and knowingly resist, delay, and obstruct a public officer named Delos McBride, * * * a duly qualified and acting deputy sheriff, who was then and there in the discharge and attempting to discharge his duty as such deputy sheriff, being then and there engaged in making an arrest of said W. J. Bradshaw for a misdemeanor committed then and there in the presence of said deputy sheriff, to-wit, unlawfully driving cattle from their accustomed range," etc. McBride attempted to make the arrest without a warrant.

The statute authorizes a peace officer to make an arrest without a warrant under the circumstances indicated in section 9057 of the Revised Codes; among others, "for a public offense committed or attempted in his presence." Speaking generally, if [1] such an officer has in his hands a warrant fair on its face, issued by a competent court, commanding him to arrest a person named therein, his warrant is his authority, and the person named in it must submit to arrest even though he is not guilty of any offense. The officer, after making his purpose known and exhibiting his warrant, if required to do so, may use force in order to effect the arrest, without subjecting himself to a charge of trespass, provided he uses only such force as is necessary (Rev. Codes, secs. 9062–9064; *Sandford* v. *Nichols*, 13 Mass. 286, 7 Am. Dec. 151; *Appling* v. *State*, 95 Ark. 185, 28 [2, 3] L. R. A. (n. s.) 548, 128 S. W. 866). His right to arrest without a warrant, however, is vested in him by law, only under the circumstances defined in section 9057, and if the circumstances do not exist, thus bringing into activity the authority of the law, he has no power to make the arrest. His effort to do so is a trespass upon the right of the citizen to the enjoyment of his personal liberty free from aggression by anyone. In such case the person sought to be arrested may use such force as may be necessary to prevent the arrest, or to effect his escape

after arrest. (*Miers* v. *State*, 34 Tex. Cr. Rep. 161, 53 Am. St. Rep. 705, 29 S. W. 1074.) True, the offense for which the [4] arrest is sought may be in the form of resistance or obstruction offered to the officer in an attempt to arrest the defendant or another, or to discharge some duty under civil process (Rev. Codes, sec. 8259) ; but the power to make it must be brought into activity by the actual existence of the emergency pointed out by the law; and upon a prosecution for the offense of resisting an officer, this fact must be established by the same quantum of proof as is required to establish any material fact in any other criminal case. It is not sufficient that the officer believed that the defendant was engaged in a violation of the law, though such belief may have been entertained in the utmost good faith. Such was the rule at common law, and such is the rule under the statute. (1 Wharton's Criminal Law, 11th ed., sec. 136; *Sanders* v. *Davis*, 153 Ala. 375, 44 South. 979; *Cummins* v. *State*, 6 Okl. Cr. 180, 117 Pac. 1099.) The officer must [5] also make known his official character, or it must be known to the offender; else there is no obligation upon the latter to submit. (2 Wharton's Criminal Law, 11th ed., sec. 852; *Jones* v. *State*, 114 Ga. 73, 39 S. E. 861; *Yates* v. *People*, 32 N. Y. 509.)

There is some conflict in the evidence as to whether the defendant was informed of the purpose of the deputy, or presumptively knew of his character and purpose, and also upon the point whether the deputy made a *bona fide* attempt to effect defendant's arrest, or went further than to say to him that he was under arrest. It shows without contradiction, however, that the defendant was not engaged in committing any offense, or attempting to commit any.

[6] Section 8858 of the Revised Codes declares: ''That any person or persons other than the owner of, or his agents who shall drive any horses, mules or cattle farther from their usual and customary ranges, than the nearest corral, and who shall neglect to return such horses, mules or cattle immediately to their accustomed range, provided they can have the use of such corral shall be deemed guilty of a misdemeanor, and on con-

viction thereof before any justice of the peace, in the state of Montana shall be fined in any sum not exceeding one hundred dollars nor less than twenty-five dollars, to be collected as other fines are, and may also in the discretion of the said justice of the peace be imprisoned in the county jail for a term not more than three months, or both. All fines collected under the provisions of this Act shall be paid into the school fund of the county in which the said stock do most usually range and graze.'' This provision is the only one in the Codes now in force upon the subject, though the district court and the county attorney both entertained the view that the defendant, by his conduct at the time of his alleged resistance to the officer, was acting in violation of section 8860. The trial court proceeded upon this theory, but that this was erroneous will be made clear by a brief reference to the history of these two provisions. Section 8860 was a part of the Penal Code of 1895, as reported by the Code Commission appointed under the act of March 14, 1889 (Laws 1889, p. 116), and the amendment thereto by the act of March 6, 1891 (Laws 1891, p. 278). It is found in the Penal Code of 1895 as section 1187. When the Codes of 1895 were adopted, the legislature, by an act commonly known as the Omnibus Bill, found in Part V, Title IV, of the Political Code of 1895, and appearing in the Revised Codes as sections 3560–3566, continued in force many of the laws of 1893, among them an act approved March 6, 1893, which is found in the Codes of 1895 as section 1185 (sec. 8858, *supra*). It is declared by one of the provisions of the Omnibus Bill (Pol. Code 1895, sec. 5184 [Rev. Codes, sec. 3564]) that: ''If any of the acts or parts of acts herein enumerated are in conflict with, or are inconsistent with, any of the provisions of the said Codes enumerated in section 3563 [Rev. Codes, sec. 5183] of this act, or any of them, the acts or parts of acts herein enumerated are to be considered and construed as amendments to the respective Code or Codes, whose provisions they are in conflict with, or are inconsistent with, it being intended hereby that all of the acts or parts of acts herein enumerated shall be the law of the state of Montana,   .

upon the respective subjects, so far as they are inconsistent with the provisions of the said Codes, or any of them, except as herein provided." Upon a comparison of the two provisions it becomes apparent, not only that section 8858 is in conflict with section 8860, but so much so that the conclusion is necessary that by the retention of the former the legislature must have intended to supplant entirely the latter. The latter declares that any willful driving of any of the animals enumerated from their customary range without the consent of the owner is a misdemeanor; whereas, under the former, they may be driven away without the consent of the owner, provided this is done under the restrictions imposed, and they are thereafter returned. It is usually the case that animals of different owners customarily graze in common upon the public range. When this is the condition, an owner of a part of the herd can more conveniently and expeditiously separate his from the rest if he may drive the common herd to a near-by corral or other similar inclosure which he can make use of for that purpose, thereafter returning the others to the range. The right to do this was commonly recognized among stockmen in this state at the time the law of 1893 was enacted. By bringing it forward and preserving it in force, it was evidently the purpose of the legislature to give recognition to this custom and denounce as an offense only a violation of it, rather than to declare the more stringent rule found in section 8860. It doubtless also entertained the view that the former would effectively protect the absent owner from loss of his animals by having them driven away and scattered, and at the same time discourage attempted monopoly of the range by a more powerful and aggressive neighbor. It follows, therefore, that the former must be considered the law on the subject with which it deals, though both provisions have been brought forward into the Codes.

It will not be necessary to discuss the evidence in detail. These facts are not controverted: The defendant resides in section 22, township 8 north, range 52 east, being the owner of 400 acres in that section. He owns several other entire sections in

that township. He is also the owner of sections 19, 29, 31 and
33 in township 8 north, range 53 east. The intervening sections
are owned in whole or in part by other persons. All of section
20 in this township is open public range, except 160 acres cover-
ing the north half of the northeast quarter. At the time this
controversy arose, this was under the control of J. H. Bickle,
the prosecuting witness. He therefore was entitled to use the
entire section. Prior to August 17, 1915, section 29 had been
open range, and was pastured in common by cattle of the de-
fendant, Bickle, and others who have homesteads or hold land
by some sort of ownership in the neighborhood. Bickle resides
in section 4, township 7 north, range 53 east, about five miles
southeast of Bradshaw. Mrs. Agnes Barter has a homestead
filing in section 34, township 8 north, range 53 east, but the
entire section was open range at the time stated in the informa-
tion, affording water and good pasturage. There is evidence
that while the cattle in the community more usually ranged upon
sections 20 and 29, they also ranged on section 33 until it was
fenced by Bradshaw, and also on section 34. For range during
the winter of 1914–15 Bickle had held his cattle in the neighbor-
hood of his home upon the section in which he resides, and others
toward the north, and thereafter permitted them to run at
large on such public lands as were open range to the north and
northwest. For the reason that water was more readily accessi-
ble in that locality, they drifted toward sections 33, 29 and 20,
and further toward the west, which was mainly open range. In
the early part of April, 1915, Bradshaw acquired sections 33
and 29. He inclosed section 33 in June or July. At the time
this controversy arose he was engaged in fencing 29. The in-
closure was completed on August 19. During the progress of
this work, friction had developed between him and Bickle by
reason of the fact that Bradshaw had, at different times, driven
from section 29 the cattle running at large there, including some
of Bickle's. His apparent purpose was to preserve the grass
there for his own cattle. The direction in which he drove them
depended upon where he found them upon the section. On the

afternoon of August 17 the deputy sheriff, who had been informed of the acts of Bradshaw and was on the watch for him, discovered him and his son, both on horseback, rounding up a number of cattle, including some of Bickle's, near the southeast corner of section 29, and starting them in the direction of section 33. He approached Bradshaw on horseback, and told him not to drive the cattle in that direction, but to drive them to section 20. Upon refusal of Bradshaw to obey, he told him he was under arrest. The latter refused to submit, in the meantime whirling a rope, which he had been using as a quirt. The deputy testified that Bradshaw struck at his horse with the rope, so frightening it that he could not reach Bradshaw to effect his arrest. The deputy then went away, saying that he would have the sheriff come the following day and make the arrest. Bradshaw then drove the cattle through a gap in the fence upon section 33, and thence over upon section 34.

It is the policy of the federal government that the open, [7] unoccupied public lands shall be free to all persons who desire to use them for grazing their stock. This policy is indicated by the act of Congress approved February 25, 1885 (23 Stat. 321, c. 149), prohibiting the erection of inclosures thereon, except by *bona fide* settlers or persons intending in good faith to make entry of the area so inclosed. This same policy is indicated by our own statute *supra*. No one can lawfully exercise control over any of them to the exclusion of others and thus monopolize the use of them. (*Buford* v. *Houtz*, 133 U. S. 320, [8] 33 L. Ed. 618, 10 Sup. Ct. Rep. 305.) Even when one has acquired title to portions of them, these are still open to use by animals running at large, until the owner chooses to make exclusive use of them. The owner is entitled to so use them at any time, for the ownership of property carries with it the right to the exclusive possession and enjoyment of it. (Rev. Codes, sec. 4421.) He may exercise this right either by erecting lawful inclosures or by preventing encroachment by animals running at large, by keeping them driven beyond his boundaries. His right extends no further than to drive them across his own

boundaries; but he is not bound to drive them to one portion of their customary range rather than to another.

The purpose of defendant here was, not to monopolize any [9] portion of the public range, nor to drive the cattle away from it, for section 34 was a part of it, but merely to drive them entirely from his own land, leaving them on the range immediately in the vicinity of lands of their owner. This he had a right to do, and in doing so committed no offense.

The judgment and order are therefore reversed, and the cause is remanded to the district court, with directions to discharge the defendant.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.