[Crim. No. 685.   Second Appellate District, Division One.—November
12, 1919.]

In the Matter of the Application of FLORENCE MIL-
STEAD et al. for a Writ of Habeas Corpus.

[1] PEACE OFFICERS—ARREST WITHOUT WARRANT—FALSE IMPRISON-
MENT.—Where a rooming-house ordinance makes it a misdemeanor
for any person to resort to a rooming-house, lodging-house, hotel,
or other place for the purpose of having therein sexual inter-
course with a person to whom he or she is not married, no au-
thority resides in a police officer to make the arrest of any such
person without a warrant, unless all of the acts essential to make
out the crime are committed in the actual presence and view of
such officer.  The arrest of a person upon suspicion, or upon
information of others, that a misdemeanor has been committed
is wholly unauthorized and the arrest in such a case, being
without process, makes the person who accomplishes the same
guilty of false imprisonment, which is either a high-grade mis-
demeanor or a felony, depending upon the use or nonuse of vio-
lence in effecting the arrest.

[2] POLICE POWER—VIOLATION OF ROOMING-HOUSE ORDINANCE—QUAR-
ANTINE REGULATIONS.—The health department of a city enacting
such a rooming-house ordinance may not assume, without any
previous knowledge, information, or report as to the individual
concerned, that every person arrested by officers and booked at
the city jail as having violated such ordinance is reasonably likely
to be afflicted with a quarantinable disease, and by a general
instruction cause all such persons to be held without bail and
under pretended quarantine pending investigation as to their con-
dition.

[3] ID.—REASONABLE CAUSE FOR QUARANTINE—DUTIES OF HEALTH
AUTHORITIES.—Where a sufficient reasonable cause exists to be-
lieve that a person is afflicted with a quarantinable disease, the
health authorities have the right to examine into the case and,
in a proper way, determine the fact, but such preliminary in-
vestigation must be made without delay, and if quarantining is
found to be justifiable, only such quarantine measures may be

1.   Arrest without warrant by peace officer for misdemeanor com-
mitted in his presence, note, 9 Ann. Cas. 623.

3.   Compulsory examination for venereal disease, note, 2 A. L. R.
1332.

Right of one detained pursuant to quarantine to *habeas corpus*,
note, 2 A. L. R. 1542.

resorted to as are reasonably necessary to protect the public health, remembering that the persons so affected are to be treated as patients and not as criminals.

PROCEEDING in Habeas Corpus to secure the release of persons imprisoned in the city jail pending examination as to their being afflicted with a quarantinable disease. Petitioners ordered discharged.

The facts are stated in the opinion of the court.

David D. Sallee and Gesner Williams for Petitioners.

Erwin W. Widney, City Prosecutor, and J. D. Taggart, Deputy City Prosecutor, for Respondent.

THE COURT.—*Habeas corpus.* Petitioners herein prosecute this writ for the purpose of being relieved from imprisonment in the city jail of Los Angeles city, the petition setting forth that they were therein held without process or warrant of law. It is alleged in the petition that at 1 o'clock A. M. on a certain Sunday morning of August, petitioners were arrested by police officers in Los Angeles city; that such officers had no warrant for the arrest of petitioners and that upon being arrested petitioners were held in the city jail until the hour of 8 o'clock P. M. of the same day, without having been taken before a magistrate or being permitted to give bail. At the last-named hour a writ of *habeas corpus* was secured from a judge of the superior court and hearing thereafter had thereon. It is alleged, further, that the arrest was made by the officers under the claim that petitioners were violating an ordinance of the city of Los Angeles, commonly called the "Rooming-house Ordinance"; that, in fact, petitioners had not violated the provisions of said ordinance. The return made by the chief of police admits that the arrest was made as charged, except that it is set forth that petitioners were at the time of the arrest violating the provisions of the ordinance mentioned, the main provisions of which ordinance, as set forth in the return, being as follows: "Sec. 2. It shall be unlawful for any person to resort to any rooming-house, lodging-house, hotel, or other place in the city of Los Angeles, for the purpose of having therein sexual intercourse with a

person to whom he or she is not married." A further statement in the return declares that for two years or more last past it has been the practice of the health department of the city to examine all persons brought to the city jail "charged with the violation of said Ordinance 25640, or charged with any other offense involving sexual immoralities or lewdness, to determine the freedom of such persons from contagious and infectious quarantinable venereal disease." The return further states that "about" one thousand persons have been examined within the time mentioned and "that it has been the experience of such examining and investigating officers of said health department that about ninety per cent of the women so arrested and charged are found to be afflicted with contagious and infectious venereal disease in some form; that for the past two years or thereabouts a part of said city jail has been set aside for the detention and quarantine of women so arrested and charged, pending a positive determination by the officers of said health department of their freedom from such disease." It is then stated that the woman petitioner was, upon her being arrested, detained in quarantine pending investigation as to her condition, and that petitioner Dillon was likewise detained in another portion of the jail pending like determination as to his condition. It is shown also by the return that up to the time that the superior court issued its writ of *habeas corpus* no examination had been made of the parties.

Digesting the admitted facts shown on the part of respondent, it appears that whenever persons arrested for violating said rooming-house ordinance are brought to the city jail they are, by the chief of police, held without bail and under pretended quarantine by reason of a general instruction given by the health department of Los Angeles city, and without any knowledge being had on the part of the health department or its inspectors which would give rise to reasonable cause, or even suspicion, that the persons so detained are afflicted with contagious or infectious venereal disease. The ordinance in question is not an ordinance designed particularly to cover cases of prostitution; in fact, it would seem to exclude persons committing illicit sexual acts at their established place of abode, regardless of the character of such persons. The return, as already appears, shows that the practice of the health department is to cause persons

to be examined who may be "charged" with the misdemeanor under the ordinance. As the facts show in this case, quarantine is pretended to be made in advance of the ascertainment, in a legal way, of the fact as to whether the ordinance has been violated by the persons charged. As to how long this preliminary quarantine continues, we can only conjecture that the time is regulated wholly by the will of the health department. Meanwhile, the persons subjected to this restraint, while they were arrested under the authority of the criminal law, must remain in custody without being allowed bail, and, we may assume from some quarantine rules set forth in the brief of respondent, without the privilege of conferring with any person, except such as the health department may permit to visit them. In the event that the individuals detained are not willing to submit their persons to examinations of a highly private nature, we can also conjecture that their detention may be prolonged until, by the force of that coercion and to escape confinement behind jail doors, they may submit to the demands of the health officers. The respondent chief of police seems to occupy two positions here: one as custodian of the criminally charged inmates of the city prison, and the other as quarantine keeper, using the same jail as a quarantine hospital. The right of the health authorities to subject the person of an individual afflicted with contagious disease to quarantine restraint is an extreme measure recognized as being necessary in cases of epidemics and instances where such detention is necessary to properly protect the public health. Sick persons who are subjected to such quarantine are not deemed to be criminals, and are to be treated with every consideration and afforded conveniences reasonably procurable under the circumstances. In cases such as this persons are not arrested under any direction of the health department, but are arrested solely and only because it is claimed they have violated the provisions of an ordinance of the city. [1] In the first place, the offense being a misdemeanor, no authority resides in a police officer to make the arrest without a warrant, unless all of the acts essential to make out the crime are committed in the actual presence and view of such officer. The arrest of a person upon suspicion, or upon information of others, that a misdemeanor has been com-

mitted is wholly unauthorized, and the arrest in such a case being without process, makes the person who accomplishes the same guilty of false imprisonment, which is either a high-grade misdemeanor or a felony, depending upon the use or nonuse of violence in effecting the arrest. (Pen. Code, sec. 236. See, also, on the right to make arrests, sec. 840, et seq., Pen. Code.)   We have referred to this question here because it appears from the petition that this arrest for misdemeanor was made late in the night (at 1 o'clock A. M.), and the verified petition declares that the petitioners had, at the time of their arrest, committed no offense against the law.   The return of the chief of police does declare (necessarily, however, upon information and belief) that petitioners, at the time of their arrest, had committed a misdemeaner.   No facts are set forth showing that the misdemeanor was committed in the presence of police officers, which condition must have existed to make the arrest lawful at all.   However, we may be justified in presuming that peace officers, in endeavoring to apprehend persons violating the municipal regulation, would not commit a criminal offense of a much more serious character than that which they accuse the persons arrested of having committed.   Hence, for the purposes of this case, we will assume that the arrest was legally made.   It may be assumed, too, that under the laws relating to the public health, inspection and quarantine may be made of persons, animals, and property by the duly constituted health authorities where it is known, or appears upon reasonable ground, that the person so subjected to inspection or quarantine is afflicted with contagious or infectious diseases, such as are enumerated in section 2979a of the Political Code.   [2] The question that we finally reach here is as to whether the health department may reasonably assume, without any previous knowledge, information, or report as to the individual concerned, that every person arrested by officers and booked at the city jail as having violated the ''Rooming-house Ordinance'' is reasonably likely to be afflicted with a quarantinable venereal disease.   If it could be assumed that every person who had sexual intercourse with another to whom he or she was not married, at a hotel or lodging-house at which they might meet for the purpose, was a person given to promiscuous acts of sexual intercourse, then we

might agree that, in part, the practice of the chief of police and health department in such cases as has been herein outlined finds some justification in the law. But we do not agree that any such general deduction should be made, in view of the great concern of the law for the liberty of individuals. We think that for such detention to be legally justified, the return of the officer should show some further reason why the persons so detained are suspected of being afflicted with disease. We have before noted that this ordinance appears not to be aimed at the common prostitute who may engage in illicit intercourse at a fixed place of abode. We have called attention further to that feature of the practice which denies to the person accused the right first of establishing his or her innocence in the court where the charge is triable. Virtually the health officers, through their orders to the chief of police, say to the individual: "We don't know whether you are guilty of this offense or not; if you were guilty we think it would furnish reason to suspect that you are afflicted with a venereal disease; but whether guilty or innocent, you have been arrested and you must remain confined without bail and without being permitted communication with the outside world, except with our consent, until you have submitted to a private examination and convinced us that you are free from the taint of disease." The bare statement of this proposition, considered in view of all the safeguards which have been thrown around the liberty of the individual, is shocking to our sense of justice. [3] Where sufficient reasonable cause exists to believe that a person is afflicted with a quarantinable disease, there is no doubt of the right of the health authorities to examine into the case and, in a proper way, determine the fact. Such preliminary investigation must be made without delay and if quarantining is found to be justifiable, such quarantine measures may be resorted to only as are reasonably necessary to protect the public health, remembering that the persons so affected are to be treated as patients and not as criminals.

Our conclusion is that the return in this case does not show that the health department of the city of Los Angeles had reasonable cause to believe that the petitioners were afflicted with a contagious or infectious disease which warranted their being placed in quarantine. What was said by

this court in the case of the *Application of Grace Johnson,* 40 Cal. App. 242, [180 Pac. 644], was intended to be read only in view of the facts of that particular case. That was a case where it was shown that the petitioner was in fact afflicted with an infectious or contagious disease and that she was then confined in a hospital especially designed for the care and treatment of such patients.

It is ordered that petitioners be discharged from the custody of the chief of police.