[Crim. No. 693. Second Appellate District, Division Two.—April 14, 1920.]

## THE PEOPLE, Respondent, v. LEWIS H. GILMAN, Appellant.

[1] CRIMINAL LAW—MURDER OF ARRESTING OFFICER—CONTEMPORANEOUS ATTEMPT ON LIVES OF OTHERS—RES GESTAE—EVIDENCE.— In this prosecution for the murder of a special deputy sheriff, who was shot and killed by the defendant after he had taken the latter into custody for committing a breach of the peace, the fact that the defendant, without a moment's hesitation or delay, rushed from the scene of the first shooting, in an attempt upon the lives of members of the family in whose presence he had committed the breach of the peace for which he was taken into custody, was competent evidence tending to show that the motive which impelled him in both instances was anger and resentment growing out of the previous quarrel and altercation in which they had all participated.

[2] ID.—RESISTANCE TO UNLAWFUL ARREST—HOMICIDE—DEGREE OF CRIME.—To admit the application of the doctrine that where in resistance of an illegal arrest the extreme of taking the life of the officer is resorted to, the homicide cannot at most be more than manslaughter, there must be evidence not only that there was an illegal arrest, but that the killing was done in actual resistance to the act of making the arrest or maintaining the illegal custody of the defendant.

[3] ID.—VERBAL NOTICE OF ARREST FOR MISDEMEANOR—KILLING OF OFFICER.—A person who is merely formally restrained by a verbal notice that he is under arrest for a misdemeanor cannot respond by shooting to death the officer and escape the charge of murder on the ground that he was protecting his liberty from illegal restraint.

[4] ID.—SUBMISSION TO ARREST—SUBSEQUENT HOMICIDE—DEGREE OF CRIME—INSTRUCTIONS.—The defendant having submitted to the arrest and thereafter, while out of the physical control of the officer, having shot and killed the latter, the trial court properly refused an instruction in behalf of the defendant to the effect that where the evidence shows a homicide is committed in resisting an unlawful arrest, the ground of conviction is limited to manslaughter.

---

2. Homicide in resisting arrest, notes, 66 **L. R. A.** 353; 33 **L. R. A.** **(N. S.)** 143.

APPEAL from a judgment of the Superior Court of San Diego County. T. L. Lewis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Shreve & Shreve and Geo. H. Shreve for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and Thomas A. Wood for Respondent.

SLOANE, J.—The defendant and appellant was convicted before a jury in the superior court of the county of San Diego of murder in the first degree.

The circumstances leading up to the tragedy were substantially as follows: The defendant and his wife, on the morning of May 17, 1919, were in the kitchen of their house on the outskirts of the village of La Mesa. Just across the street lived a family by the name of Parks. One Miller, the brother of Mrs. Parks, on the occasion in question, fired his shotgun at a rabbit in the distance. The defendant and his wife, startled by the shot, and appearing to think the shot was aimed in their direction, ran out of the house and, approaching Miller, who had fired from the Parks' grounds, accused him of shooting in the direction of and into defendant's house. The parties thereupon engaged in an altercation over the matter, Miller disclaiming shooting in the direction of the house. Different members of the Parks family came upon the scene, and the testimony is to the effect that defendant became much excited and very abusive. During the altercation the decedent, Fay, who was a special deputy sheriff, came upon the scene of action. He announced that he was an officer. The defendant demanded the arrest of Miller for unlawful shooting. Miller then explained that he had been shooting at a rabbit, and pointed out to Fay the place from which he shot, the location of the rabbit, and the direction of the shots. Miller's statement, according to the testimony of the People's witnesses, greatly angered defendant, and he applied a number of very offensive, vulgar, and opprobrious epithets to Miller and other members of the Parks family, in the presence and hearing of Fay and the women and children of the Parks family. The language and conduct, as testified to on the part of the People, clearly constituted a breach of the peace.

Fay then ordered Gilman from the premises, and apparently took him into custody, leading him away toward defendant's own home. On approaching the house, defendant went in advance of Fay and defendant's wife, who had accompanied them back from the scene of the altercation, and entered the house, while Fay remained on the porch or just in front of the steps on the outside. . In a very short time defendant reappeared with a revolver in his hand and immediately opened fire upon Fay, shooting him twice and killing him instantly. He then, without stopping, hurried across the street toward the Parks' home, where Mrs. Parks and her mother and the children were standing outside. He fired the pistol, and the women and children ran. He overtook Mrs. Parks, tried to shoot her, but she diverted the shot by grasping his arm. He then threw her to the ground and beat her over the head with the pistol. She was rescued by Miller, her brother, who sprang upon the defendant from a window, held him down upon the ground and beat him into submission; and he was then again taken into custody.

Subject to two assignments of error presented on this appeal, there is no question that the conviction of the defendant for murder in the first degree was amply justified under the law and evidence of the case. [1] One of the grounds of error relied on is the admission in evidence, over the objection of defendant's counsel, of the testimony regarding the assault upon Mrs. Parks by the defendant immediately after the killing of Fay. It is claimed that this was a subsequent and independent offense, not a part of the *res gestae*, and the testimony thereof extremely prejudicial to defendant.

The general rule that evidence of another offense cannot be introduced for the purpose of indicating a likelihood that the defendant is guilty of the crime charged is undisputed. The exception to the rule, as pointed out in *People* v. *Edwards*, 13 Cal. App. 551, [110 Pac. 342] is where the evidence of other acts is so connected with the original transaction as to be part of the *res gestae* or to show the motive and intent of the act charged. In this case the only justification suggested for the shooting of Fay was that it was done in resisting an illegal arrest. We think the fact that the defendant, without a moment's hesitation or delay, rushed from the scene of the first shooting, in an attempt upon the lives of members of the Parks family, was compe-

tent evidence tending to show that the motive which impelled him in both instances was anger and resentment growing out of the previous quarrel and altercation in which they all had participated; and that it was not in resistance to an arrest, but in resentment at the part that the deceased and the members of the Parks family had taken against him, that he entered upon his murderous purpose.   The facts in *People* v. *O'Bryan,* 165 Cal. 59, [130 Pac. 1044], present a closely analogous case, where the court says: ''There was no error in permitting the people to prove the assault upon Molina, following the firing of the shot that killed Avila. The general rule is, of course, that evidence of other offenses other than the one for which the defendant is on trial is not admissible.   But where the two offenses are part of a single transaction, 'every element of defendant's conduct in that transaction could be shown to the jury for the purpose of illustrating his motive and intent in committing the act which was the basis of the charge against him.' (*People* v. *Manasse,* 153 Cal. 10, [94 Pac. 92]; *People* v. *Walters,* 98 Cal. 141, [32 Pac. 864]; *People* v. *Craig,* 111 Cal. 468, [44 Pac. 186]; *People* v. *Teixeira,* 123 Cal. 298, [55 Pac. 988]; *People* v. *Suesser,* 142 Cal. 363, [75 Pac. 1093].)   It was the theory of the prosecution—and the theory was entirely reasonable under the evidence—that the shooting of Avila and the assault on Molina were parts of one attack upon the two, perpetrated in pursuance of a single scheme to terrorize or  injure them because they were working for the Llewellyn Iron Works.   Whatever was done in the course of that attack was proper as throwing light on the motive and intent of O'Bryan and his companions.''

The other exception taken by appellant is to the ruling of the trial court in refusing an instruction in behalf of defendant to the effect that where the evidence shows that a homicide is committed in resisting an unlawful arrest, the ground of conviction is limited to manslaughter.

Defendant, corroborated to some extent by the testimony of his wife, denied that he was guilty of any tumultuous or offensive conduct, or used any vulgar, profane, or indecent language in the presence of Fay and the other persons present at the time of the arrest.   As Fay was only a special officer, he was without official authority to make arrest without a warrant, and under the authority of sections 836

and 837 could only have legally arrested defendant for a breach of the peace committed in his immediate presence, either in official capacity or as a private person. While the evidence on this matter is such as to render it extremely unlikely that the jury entertained a reasonable doubt that defendant was disturbing the peace at the time of his arrest, the evidence to the contrary was such as to make the question of an illegal arrest one for their consideration. [2] It cannot be doubted that the doctrine contended for by appellant, and stated in the opinion of the court in *People* v. *Dallen,* 21 Cal. App. 770, [132 Pac. 1064], that "where in resistance to an illegal arrest the extreme of taking the life of the officer is resorted to, the homicide cannot at most be more than manslaughter," finds support in a well-recognized line of authority. (*Ross* v. *State,* 10 Tex. App. 455, [38 Am. Rep. 643] ; *Briggs* v. *Commonwealth,* 82 Va. 564; 1 Wharton's Criminal Law, sec. 136, and citations.) To admit, however, the application of this doctrine there must be evidence not only that there was an illegal arrest, but that the killing was done in actual resistance to the act of making the arrest or maintaining the illegal custody of the defendant. [3] It cannot be admitted that a person who is merely formally restrained by a verbal notice that he is under arrest for a misdemeanor can respond by shooting to death the officer and escape the charge of murder on the ground that he was protecting his liberty from illegal restraint. (2 R. C. L., p. 474; *Roberson* v. *State,* 43 Fla. 156, [52 L. R. A. 751, 29 South. 535] ; *State* v. *Meyers,* 57 Or. 50, [33 L. R. A. (N. S.) 143, 110 Pac. 407] ; *Porter* v. *State,* 124 Ga. 297, [2 L. R. A. (N. S.) 730, 52 S. E. 283].)

[4] In this case the arrest was effected by notifying defendant that he was under arrest, and perhaps by the further placing of hands upon him to direct him from the premises. Had he at that time resisted, and, in a struggle to regain his freedom, killed the arresting person, there might be room for the application of the doctrine contended for. But the homicide here occurred some time after the arrest, while the defendant was out of the physical control of the officer. Defendant had gone into his own house, ostensibly to get his coat and hat. Instead of asserting his freedom by refusing to return to the custody of the officer, he armed himself, and, returning to where the officer waited, for the

purpose, as he himself declares, of ordering him from the premises, shot him down, without giving him a chance to leave or waiting for any overt act in attempted furtherance of the alleged illegal arrest. The testimony of the defendant and his wife as to the alleged act of Fay in making a movement and reaching out his arm toward the defendant, who was approaching him with a gun in his hand, presents too trivial a circumstance to in any way justify the shooting. At the time of the homicide the deceased was using no force or show of force toward the defendant. In *People* v. *Bradley*, 23 Cal. App. 44, [136 Pac. 955], where a special policeman in plain clothes arrested a man on suspicion, without revealing his identity as a peace officer, and the prisoner, while walking with the officer to the jail, suddenly turned into an alley and shot the officer, it is held that the killing was not justifiable, nor was the act reduced from murder to manslaughter. The court says: "We are satisfied that the evidence is amply sufficient to support the verdict of the jury finding the defendant guilty of a willful and malicious murder. Not even the semblance of a legal excuse is shown for the killing of the deceased. It may be conceded that the evidence does not show that the arrest of the defendant was authorized, and that, therefore, it was a trespass against the person of the defendant, which might have been rightfully resisted with the same degree of force employed in making the arrest. The evidence, however, affirmatively shows that no force or show of force was resorted to by the deceased at any time. The mere fact that the deceased failed to reveal his identity as a peace officer, and the further fact that the arrest was apparently unauthorized and not made in strict accord with the forms required by law, may have justified the defendant in breaking the arrest, but such facts alone were wholly inadequate either to justify the killing of the deceased or to reduce such killing from murder to manslaughter. (*People* v. *Pool*, 27 Cal. 573; *Keady* v. *People*, 32 Colo. 57, [66 L. R. A. 353, 74 Pac. 893].)"

The instruction asked by appellant and refused by the court was as follows: "The court instructs you that if you find from the evidence that the decedent, Fay, was attempting to make an unlawful arrest of the person of the defendant, Gilman, and that the killing occurred while the defendant was resisting such unlawful arrest, it will then be

your duty to acquit the defendant of the charge of murder, both of the first and second degree, and consider only the question of whether or not he be guilty of manslaughter." We are satisfied that there was no sufficient evidence before the jury that the shooting was done in resisting an arrest to justify the instruction. Even if technically a proper instruction, the circumstances of the shooting, as shown in evidence, were such as to render it extremely improbable that its absence was in any way prejudicial to the defendant, or at all affected the verdict of the jury; and the error, if there was such, might be disregarded under section 4½ of article VI of the constitution.

Judgment affirmed.

Finlayson, P. J., and Thomas, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 10, 1920.

All the Justices concurred.