SHAW, P. J.
 

 The defendant appeals from a judgment of conviction and from an order denying his motion for a new trial. The charge against him is that he did “resist, delay and obstruct” two named public officers “in the discharge and the attempt to discharge a duty of his office, to wit: the arrest of” one Overhold (who spells his name Overholt, and will hereinafter be referred to by that spelling) for a violation of section 415 of the Penal Code.
 

 The complaint designates section 148, Penal Code, as the legal foundation of the charge. This section declares that “Every person who willfully resists, delays, or obstructs any public officer, in the discharge or attempt to discharge any duty of his office, when no other punishment is prescribed, is punishable” in such manner as to make the offense a misdemeanor. Manifestly this section requires, in order to constitute the offense, four elements: (1) wilfulness, (2) resistance, delay or obstruction of (3) a public officer, and (4) some official duty which the officer is then discharging or attempting to discharge. Defendant does not claim that the evidence is insufficient to show the existence of the first three of these elements, but contends that there is no proof of the fourth.
 

 
 *908
 
 On all elements of the offense, including the fourth, the prosecution had the burden of proof.
 
 (People
 
 v.
 
 Rabalete
 
 (1938), 28 Cal.App.2d 480, 487 [82 P.2d 707] ;
 
 McGuire
 
 v.
 
 State
 
 (1923), 19 Ala.App. 138 [95 So. 565, 567] ;
 
 Harris
 
 v.
 
 City of Tuscaloosa
 
 (1926), 21 Ala.App. 392 [108 So. 768, 769] ;
 
 State
 
 v.
 
 Winter
 
 (1913), 24 Idaho 749 [135 P. 739, 740].) The conviction cannot be upheld unless it appears that the arrest of Overholt—the only official duty charged—was lawful; for if it was unlawful, manifestly no official duty was being discharged in making it. Section 836, Penal Code, provides for arrests without a warrant, and reads as follows :
 
 “A
 
 peace-officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person: 1. For a public offense committed or attempted in his presence. 2. When a person arrested has committed a felony, although not in his presence. 3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it. 4. On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested. 5. At night, when there is reasonable cause to believe that he has committed a felony.” Section 415, Penal Code, for alleged violation of which the officers were making the arrest which defendant resisted, declares violation of its provisions to be a misdemeanor. Being police officers of the city of Los Angeles, these officers were peace officers (Pen. Code, §§ 7 (subd. 8), 817).
 

 Respondent contends on this point that “an arrest is lawful if there is reasonable cause therefor,” citing
 
 Murphy
 
 v.
 
 Murray
 
 (1925), 74 Cal.App. 726, 729 [241 P. 938] ;
 
 Gisske
 
 v.
 
 Sanders
 
 (1908), 9 Cal.App. 13, 16 [98 P. 43] ;
 
 Michel
 
 v.
 
 Smith
 
 (1922), 188 Cal. 199, 205-6 [205 P. 113] ;
 
 People
 
 v.
 
 Cupp
 
 (1926), 77 Cal.App. 472, 475-6 [246 P. 1085]. In the Cupp case the misdemeanor involved was treated as though committed in the presence of an officer, and no statement of the right to arrest on reasonable cause was made. In all the other cases here cited, it appears from the opinions that the court was discussing arrests for felonies, as to which. Penal Code, section 836, above quoted, does set up the rule of reasonable cause in the cases therein specified.
 

 But as to misdemeanors, section 836 contains no authorization for an arrest, without a warrant, on reasonable or probable cause, all its provisions of that sort being expressly limited to arrests for felonies. Under it the power and duty
 

 
 *909
 
 of an officer to make an arrest for a misdemeanor without a warrant are limited to a case where the offense is committed or attempted in the officer’s presence. This rule has been several times declared by the courts. Thus, in
 
 Boyes
 
 v.
 
 Evans
 
 (1936), 14 Cal.App.2d 472, 479 [58 P.2d 922], the court said: “Ordinarily an officer has no legal right to attempt to make an arrest for a misdemeanor on suspicion or even on mere information of another person without first procuring a warrant therefor.” Where two persons were arrested without a warrant and neither had committed or been suspected of committing any felony, the Supreme Court said, “The only justification which could be alleged for the action of the officers was that the defendants had committed a misdemeanor in their presence.”
 
 (People
 
 v.
 
 Craig
 
 (1907), 152 Cal. 42, 45 [91 P. 997].) Similar declarations were made
 
 in Ferguson
 
 v.
 
 Superior Court
 
 (1915), 26 Cal.App. 554, 557 [147 P. 603] ;
 
 Dorris
 
 v.
 
 McKamy
 
 (1919), 40 Cal.App. 267, 273 [180 P. 645] ;
 
 In re Milstead
 
 (1919), 44 Cal.App. 239, 242-3 [186 P. 170] ;
 
 People
 
 v.
 
 Gilman
 
 (1920), 47 Cal.App. 118, 121-2 [190 P. 205] ;
 
 People
 
 v.
 
 Matthews
 
 (1899), 6 Cal.Unrep. 341, 343 [58 P. 371].)
 

 Were we to regard section 836, Penal Code, as permissive but not mandatory in its delimitation of the authority to make arrests, leaving the common law in force in all eases not covered by it (Pol. Code, § 4468), we find nothing in the common law to extend such authority beyond that specified in section 836. In 6 Corpus Juris Secundum, 593, 594, 595, the rule is stated as follows: “Unless the rule is modified by statute, an officer does not have the power to arrest without a warrant for a misdemeanor not committed in his presence and view. ... It is a general rule, subject to statutory variations, that a misdemeanor must have been actually committed to justify an arrest without a warrant, and the mere belief or suspicion that a misdemeanor is being, or has been, committed is insufficient to warrant an arrest without a warrant; nor may an arrest without a warrant be made on a belief, founded on information received from a third person, that a misdemeanor is being committed.” In
 
 Carroll
 
 v.
 
 United States
 
 (1925), 267 U.S. 132 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790, 802], the court stated this as the common law rule: “The usual rule is, a police officer may arrest without warrant one believed by the officer, upon reasonable cause, to have been guilty of a felony, and that he may only arrest
 
 *910
 
 without a warrant one guilty of a misdemeanor if committed in his presence. ’ ’
 

 But the California cases already cited on the authority of an officer to make an arrest for a misdemeanor plainly imply that an officer has no such authority beyond that conferred by section 836, Penal Code, and we are satisfied that such is the law. That section is clearly intended to make complete provision for the cases in which a peace officer may make an arrest. Dealing with statutes like section 836, the courts of other states have also held that the statute is a limitation on the authority to make arrests. In
 
 Adair
 
 v.
 
 Williams
 
 (1922), 24 Ariz. 422 [210 P. 853, 26 A.L.R. 278, 282], on a statute identical with that of California, the court held that a peace officer has authority to make an arrest for a misdemeanor without a warrant “only when the offense is committed or attempted in the presence of the officer,” and that an instruction was erroneous which advised the jury that an officer might justify an arrest on his “reasonable belief” that the person arrested was then committing a misdemeanor. In
 
 Stearns
 
 v.
 
 Titus
 
 (1908), 193 N.T. 272 [85 N.E. 1077, 1078], under a similar statute, the court said: “The offense defined by section 110 of the Penal Code is made a misdemeanor. To justify an arrest without a warrant for the commission of that offense, the crime must be actually committed or attempt be made to commit it in the presence of the officer. Reasonable suspicion or probable cause to believe its commission is not sufficient.” In
 
 State
 
 v.
 
 Bradshaw
 
 (1916), 53 Mont. 96 [161 P. 710, 711], on a statute like ours, the court held that an officer had the right to arrest without a warrant only in the cases provided for by law, and said that to justify such an arrest “It is not sufficient that the officer believed that the defendant was engaged in a violation of the law, though such belief may have been entertained in the utmost good faith.” On a statute like ours so far as the right to arrest without a warrant is concerned, the court, in
 
 State
 
 v.
 
 Small
 
 (1918), 184 Iowa 882, 884 [169 N.W. 116], held that the defendant charged with resisting an arresting officer had committed no offense, and said: ‘ ‘An offense, then, must have been committed in the presence of the policeman, in order to have justified him in making the arrest. It is not enough that he may have so thought, or have had reasonable ground so to believe; the offense must actually have been attempted or committed in his presence, to have justified the arrest.”
 
 McGuire
 
 v.
 
 State, supra
 
 (1923), 19 Ala.App. 138
 
 *911
 
 [95 So. 565, 567], holds that where defendant is charged with resisting an arrest without a warrant, the state must show that he had committed an offense in the officer’s presence. Similar declarations as to the authority of an officer to make an arrest for a misdemeanor without a warrant were made in
 
 Robinson
 
 v.
 
 State
 
 (1925), 197 Ind. 144 [149 N.E. 891, 892]
 
 ; Hilla
 
 v.
 
 Jensen
 
 (1921), 149 Minn. 58 [182 N.W. 902, 903] ;
 
 Bowman
 
 v.
 
 Commonwealth
 
 (1925), 211 Ky. 118 [276 S.W. 1057, 1058] ;
 
 Mitchell
 
 v.
 
 Hughes
 
 (1918), 104 Wash. 231 [176 P. 26, 28] ; and
 
 State
 
 v.
 
 Dunivan
 
 (1925), 217 Mo.App. 548 [269 S.W. 415, 417].
 

 Section 415 of the Penal Code, for violation of which the arrest here was allegedly made, reads as follows: “Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood or person, by loud or unusual noise, or by tumultuous or offensive conduct, or threatening, traducing, quarreling, challenging to fight, or fighting, or who, on the public streets of any unincorporated town, or upon the public highways in such unincorporated town, run any horse-race, either for a wager or for amusement, or fire any gun or pistol in such unincorporated town, or use any vulgar, profane, or indecent language within the presence or hearing of women or children, in a loud and boisterous manner, is guilty of a misdemeanor, and upon conviction by any court of competent jurisdiction shall be punished by fine not exceeding two hundred dollars, or by imprisonment in the county jail for not more than ninety days, or by both fine and imprisonment, or either, at the discretion of the court.” On examining the evidence, we can find nothing to show that Overholt had committed a violation of this section, or indeed any other offense, in the presence of the arresting officers or at all. In the prosecution’s evidence, we find only this testimony of one of those officers: “I arrested Overholt for disturbing the peace.” While this is the usual designation of the offense denounced by section 415, there is nothing in this bare statement to show that such an offense had been committed, and no witness of the prosecution gave any information whatever as to the conduct of Overholt prior to his arrest. Overholt himself was a witness, and stated that prior to the time in question he had been engaged, with a large number of other persons, in picketing a place of business, that he had left the picket line for 45 minutes or so, standing with others across the street from it, that just before his arrest he recrossed the street and “blended into” the
 
 *912
 
 picket line, and that then some sort of disturbance, the cause of which he did not know, broke out at the head of the line about thirty feet away, which caused a stoppage of the line. Respondent designates as showing a disturbance of the peace participated in by Overholt, this particular part of his testimony:
 

 “A.
 
 As I was walking up here, that disturbance at the head of the line occurred -and everybody started shoving backward. You know how a crowd is, there is nothing you can do, so you are pretty well carried by the movement of the crowd. I found myself down in between these two cars, I believe it was those two cars, and these police officers were pushing the line back this way. (Indicating.) I don’t know what the disturbance was at the head of the line, but the action was to either to keep the line moving back this way—I still didn’t know what the disturbance was, but, anyhow, there was a tussle and a melee and I found myself down in between the two cars, and Officer Berger put the arm on me, you might say, and said, ‘Come along with me.’ ” In addition to Over holt’s testimony, respondent relies on that of police officers that there was “a considerable riot” and “a lot of trouble” going on, but examination of their testimony shows that they were referring to a time after Overholt’s arrest.
 

 All of this does not show anything done by Overholt personally which would constitute a disturbance of the peace, or any other offense. However, we understand respondent’s position to be that as a member of a combination or conspiracy to picket the place in question he was responsible for the acts of other pickets, either under the law of conspiracy or by the operation of section 31, Penal Code, which makes one who aids and abets in the commission of a crime a principal therein. This might be so, if the proper foundation for the application of these principles of law appeared. But we find nothing to indicate that there was any conspiracy to engage in any acts of violence or a disturbance of the peace. As far as appears, the picketing had, up to the time of Overholt’s arrest, been entirely quiet and peaceful. The disturbance at the head of the line to which he referred, broke out just prior to his arrest, and if it constituted a disturbance of the peace, which does not clearly appear, there is nothing to show that he aided or abetted it or even anticipated it. For all that appears, the disturbance may have been a “tussle” between some of the pickets about private or personal mat
 
 *913
 
 ters entirely unrelated to the picketing. There is nothing to show Overholt’s responsibility for the “trouble” or “riot” that occurred after his arrest; but if there were, those events could not be used to furnish justification for the antecedent arrest.
 

 Respondent also invokes, in justification of the arrest, the presumptions declared in section 1963, Code of Civil Procedure, that official duty has been regularly performed, that the law has been obeyed and that a person is innocent of crime, seeking to apply them to the conduct of the officers in making the arrest. In this connection, we note that by sections 236 and 237, Penal Code, false imprisonment, defined as “the unlawful violation of the personal liberty of another,” which includes an unlawful arrest (35 C.J.S. 514;
 
 People
 
 v.
 
 Agnew
 
 (1940), 16 Cal.2d 655, 659 [107 P.2d 601]) is made a crime. An unlawful arrest is also penalized, in some cases, by section 146, Penal Code. Respondent cites, in support of its argument,
 
 In re Milstead, supra,
 
 (1919), 44 Cal.App. 239, 243, and
 
 People
 
 v.
 
 Drevoir
 
 (1919), 42 Cal.App. 124, 129 [183 P. 370], The statements there made on which respondent relies are mere assumptions made for the purpose of deciding other points, and are manifestly not intended as affirmances of the propositions assumed, but are as to them obiter dicta at best.
 

 But in
 
 People
 
 v.
 
 McGrew
 
 (1888), 77 Cal. 570 [20 P. 92], where the defendant was prosecuted under section 236, Penal Code, for false imprisonment, it was held that “the imprisonment being proven, the law presumes it unlawful until the contrary is shown. It is for the defendant to justify it by proving that it was lawful” and an instruction so declaring was approved. Nothing was said about the presumptions invoked by the respondent in the ease at bar. In
 
 People
 
 v.
 
 Agnew, supra,
 
 (1940), 16 Cal.2d 655, 662, where the defendant was prosecuted under section 236, Penal Code, for false imprisonment arising out of an arrest made without a warrant, the question arose again, and the court held, “that the common law presumption of unlawfulness in unlawful imprisonment cases still exists in this state” and that it is not excluded from consideration in a criminal case by the presumption of innocence, and approved the rule stated in
 
 People
 
 v.
 
 McGrew, supra,
 
 with this qualification: That the defendant, in showing a justification for the arrest, is not bound to go further than to produce evidence which raises a reasonable doubt of his guilt, and the jury should be so instructed. This
 
 *914
 
 qualification, however, goes only to the quantum of proof necessary to overcome the presumption of unlawfulness. It can have no effect - on a ease where, as here, there is nothing sufficient for that purpose.
 

 Here, had the arresting officers themselves been prosecuted for making an unlawful arrest in violation of section 236, Penal Code, and had the evidence tending to show lawfulness of the arrest gone no further than that before us in the present record, a conviction would be sufficiently supported to stand on appeal, in view of the rule declared in
 
 People
 
 v.
 
 McGrew, supra,
 
 and
 
 People
 
 v.
 
 Agnew, supra.
 
 Is the situation changed because, instead of such a prosecution, we have a charge of resisting the same arrest as unlawful? We cannot see that it is. Since there is, as held in those cases, a general presumption that imprisonment (which includes an arrest) is unlawful, it is applicable here. And here it is aided as well as opposed, by the presumption of innocence. Whatever presumptions may come to the aid of the arresting officers, this defendant also is entitled to align the presumption of innocence in his favor. The right of personal liberty is protected by both state and national constitutions, and is not to be infringed lightly or without good cause. Our Legislature has manifested its solicitude for such liberty by enacting section 236 of the Penal Code, penalizing unlawful violations of it. It would not be consistent - with this constitutional and legislative attitude to put upon one whose guilt depends on the lawfulness of the restraint of his or another’s liberty, the burden of showing the unlawfulness of that restraint. We conclude, therefore, that no presumption is available, to supply the lack of proof that the arrest of Overholt was lawful.
 

 Unless that arrest was lawful, then, as already stated, the officers were under no duty to make it, and resistance to their action in the matter was not a violation of section 148, Penal Code (46 C.J. 874). Moreover, if an arrest is unlawful, either the person being arrested or others acting in his behalf may resist the arrest, using no more than reasonable force for that purpose. This is the effect of sections 692, 693 and 694 of the Penal Code, which provide that lawful resistance to the commission of a public offense may be made by the party about to be injured or by any other person in his aid or defense, either of whom may make sufficient resistance to prevent the offense. These sections apply here because the arrest, if unlawful, is a violation of section 236, Penal Code, and therefore a public offense. This right
 
 *915
 
 of resistance was conceded in
 
 People
 
 v.
 
 Craig, supra
 
 (1907), 152 Cal. 42, 45, 50, where it was held that the arrest was lawful and resistance to it was not justified, but the court said, “Since the right of a person to resist an unlawful attempt to subject him to arrest cannot be denied . . .,” and further, “The right of one person to aid another in defending against a threatened injury is defined by our statute (Penal Code, sec. 694), and does not differ substantially from the right as it existed under the common law. He cannot interfere except in aid of a lawful resistance by the person threatened.” In
 
 People
 
 v.
 
 Dallen
 
 (1913), 21 Cal.App. 770, 775 [132 P. 1064], the court said: “There can be no doubt that a person has the right to ‘resist an unlawful attempt to subject him to arrest’
 
 (People
 
 v.
 
 Craig,
 
 152 Cal. 43, 45 [91 P. 997],” but held that in so doing such person cannot take the life of the arresting person, unless he is resisting also threatened danger to his life or limb and may reasonably do so for .that purpose. In
 
 People
 
 v.
 
 Bradley
 
 (1913), 23 Cal.App. 44, 46 [136 P. 955], the court conceded that an unlawful arrest “might have been rightfully resisted with the same degree of force employed in making the arrest,” and this concession was quoted with apparent approval in
 
 People
 
 v.
 
 Gilman, supra
 
 (1920), 47 Cal.App. 118, 123.
 

 Similar decisions may be found elsewhere. Thus in
 
 Ryan
 
 v.
 
 City of Chicago
 
 (1906), 124 Ill.App. 188, 190, where the appellant was charged criminally with resisting an officer who arrested him without a warrant, the court held the arrest illegal because no act done in the presence of the officer was a crime, and held further that “The arrest being unlawful, appellant had a right to meet force with force, if in so doing he used such force only as was reasonably necessary to repel the assault upon his person.” In
 
 State
 
 v.
 
 Bradshaw, supra
 
 (1916), 53 Mont. 96 [161 P. 710, 711], the defendant was charged with resisting an officer seeking to arrest him without a warrant, and the court held that if the arrest is not lawful “the person sought to be arrested may use such force as may be necessary to prevent the arrest, or to effect his escape after arrest.” In
 
 State
 
 v.
 
 Small, supra
 
 (1918), 184 Iowa 882, 885 [169 N.W. 116], it was held that where the arrest without a warrant is unlawful because no offense has been committed, “the party arrested may resist with such force as appears to him, acting an an ordinarily prudent man, to be reasonably necessary. The law jealously guards the liberty of the citizen, and a public officer has no right, be
 
 *916
 
 cause of being clothed with the habiliments of office, to interfere therewith, save as provided.” The court further held an instruction erroneous which said the defendant owed the duty to submit to the officer, if he knew of his official character at the time, saying, “He owed no such duty unless, at the time, he was engaged in the commission of a public offense.”
 

 In the analogous case of an escape or a rescue from custody, a like rule has been declared. In
 
 People
 
 v.
 
 Ah Teung
 
 (1891), 92 Cal. 421, 424 [28 P. 577, 15 L.R.A. 190], the defendant was charged with assisting a prisoner to escape from jail, and the court after holding that the imprisonment was unauthorized and illegal, stated respondent’s argument that “the offense of assisting a prisoner to escape from jail is made out when it is shown that a defendant has assisted a person unlawfully confined therein to free himself from the restraint of a prison” and that “the purpose of the law is to throw a protection around jails, by malting it unlawful for friends of those confined therein to proceed in any other manner than by the writ of
 
 habeas corpus,
 
 or other legal proc- • ess, for the enlargement of such persons.” Regarding this argument the court said: “We cannot accept this view. An escape is classed as a crime against public justice, and the law, in declaring it to be an offense, proceeds upon the theory that the citizen should yield obedience to the law; that when one has been, by its authority or command, confined in a prison, that it is his duty to submit to such confinement until delivered by due course of law, no matter whether he was committed to await a future trial, or as a punishment after judgment of conviction, or for any other purpose authorized by law. But when the imprisonment is unlawful, and is itself a crime, the reason which makes flight from prison an offense does not exist. In such a case the right to liberty is absolute and he who regains it is not guilty of the technical offense of escape. And this view seems to be the one which is adopted by the courts, without dissent from any.”
 
 People
 
 v.
 
 Clark
 
 (1924), 69 Cal.App. 520, 522 [231 P. 590], was the same in its essential facts as
 
 People
 
 v.
 
 Ah Teung, supra,
 
 and the court quoted and followed the rule we have above quoted from that case.
 

 The order and judgment appealed from are reversed, and the cause is remanded for a new trial.
 

 Bishop, J., and Stephens, J., concurred.